UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| GLAS TRUST COMPANY LLC, *in its capacity as Note Trustee*,<br><br>Plaintiff,<br><br>v.<br><br>CARTER BANK & TRUST,<br><br>Defendant. | Civil Action No. 4:24-cv-00005 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6)**

Defendant Carter Bank & Trust ("Carter Bank"), by counsel, submits this Memorandum in Support of its Motion to Dismiss the Complaint filed by GLAS Trust Company, LLC, in its capacity as Note Trustee ("Plaintiff" or "GLAS") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**I.      INTRODUCTION**

GLAS brings this action seeking to recover $226.2 million in what it claims were fraudulent transfers made to Carter Bank in 2018 "on behalf of" entities known as "the Bluestone Entities." More specifically, GLAS alleges that it is the trustee for the holders of notes issued by an ill-defined entity known as Hoffman s.à.r.l. and that these noteholders have directed GLAS, as trustee, to file this Complaint against Carter Bank to recover funds that Greensill UK, the original lender and the noteholders' predecessor in interest, loaned to the Bluestone Entities. These loans allegedly were used to pay non-Bluestone Entity debts. The Complaint fails to attach any of the

documents allegedly supporting the "series of transactions" that support GLAS' claims and purportedly demonstrate that GLAS is the real party in interest to this controversy. Nor does the Complaint itself provide any information about Hoffman s.à.r.l. or the citizenship of the noteholders and/or their subsidiaries or investors.

The Complaint alleges that GLAS is a UK citizen for purposes of diversity jurisdiction. But that is not the end of the inquiry. GLAS is the trustee for an entity—Hoffman s.à.r.l.—that appears to be a business trust or other juridical entity, rather than a traditional trust, that can sue and be sued. And the Complaint wholly fails to allege facts demonstrating that GLAS has the requisite control over the assets held in its name to be the real party in interest to this controversy, as opposed to a mere conduit for a remedy flowing to the noteholders. Indeed, the Complaint alleges that GLAS is merely acting at the "direction" of the "Noteholders," implying that GLAS has little to no control or discretion in the management of the assets of the trust. If so, the citizenship of Hoffman s.à.r.l's members, beneficiaries and/or investors is what counts for diversity jurisdiction—not GLAS' citizenship. Because the Complaint lacks allegations of fact supporting diversity jurisdiction, this Court lacks sufficient facts to support the exercise of subject matter jurisdiction and should dismiss the Complaint.

In addition, the Complaint does not sufficiently allege facts supporting a claim for fraudulent or voluntary transfer as to the transfers alleged to be fraudulent and voluntary. Instead, the Complaint alleges that transfers made in September 2018 and December 2018 were made by an unidentified entity "on behalf" of the Bluestone Entities—not by any of one of the Bluestone Entities itself. Likewise, the transfer alleged to have been made to Carter Bank "at some point between September 26, 2018 … and the end of 2018" was made by Tams Management and Justice Low Seam Mining, not by the Bluestone Entities. Virginia has not adopted any uniform voluntary

or fraudulent conveyance act and, instead, maintains fraudulent conveyance statutes based on the Statute of Elizabeth. Accordingly, Virginia continues to require that a fraudulent or voluntary transfer be made *by the debtor* and not indirectly or constructively by some third party "on behalf of" the debtor. The Complaint therefore fails to state a claim against Carter Bank as to the September 2018 and December 2018 transfers and those claims should be dismissed.

## II. RELEVANT FACTUAL ALLEGATIONS

The Complaint includes 149 paragraphs of allegations (130 of which purport to be factual) and describes several convoluted transactions involving numerous parties. Accordingly, Carter Bank briefly summarizes many of the facts not directly relevant to its Motion to Dismiss. As pertinent to this Motion, the Complaint makes the following allegations.

### A. Allegations of Diversity of Citizenship

GLAS alleges that it is the Note Trustee under a document entitled the "Master Trust Deed," dated October 13, 2017. Compl. ¶ 30. The Master Trust Deed has been "supplemented by the Supplemental Master Trust Deed, dated December 21, 2017." *Id.* Plaintiff defines this document as the "Hoffman Master Trust Deed." *Id.*[1] Given GLAS' position as the "Note Trustee," the only logical inference from the assertions in the Complaint is that GLAS is the trustee for a trust entity known as Hoffman S.à.r.l., or "the Hoffman SPV." Compl. ¶ 125 (alleging that GLAS "stepped into the shoes of Citibank, which had served since 2017 as the Note Trustee for the Hoffman SPV notes.") According to GLAS, it is acting as trustee "at the direction of the holders of the requisite percentage of each relevant series of notes" (the "Noteholders"). *Id.*

---

[1] A copy of the Hoffman Master Trust Deed is not attached as an exhibit to the Complaint, although clearly it is incorporated into the Complaint and is integral to Plaintiff's allegations.

3

Carter Bank is a banking institution incorporated in the Commonwealth of Virginia, with its principal place of business in Martinsville, Virginia, and is a citizen of the Commonwealth of Virginia. Compl. ¶¶ 27, 31. GLAS is a New Hampshire limited liability company with its principal place of business in New Jersey. Compl. ¶ 28. GLAS's sole member is GLAS USA, LLC, which is a New Jersey limited liability company with its principal place of business in New Jersey. *Id.* GLAS USA LLC's sole member is Global Loan Agency Services Limited, which is a United Kingdom limited company. *Id.* Global Loan Agency Services Limited is wholly owned by GLAS Holdings Limited, also a United Kingdom limited company. *Id.* Thus, the Complaint alleges, GLAS is a citizen of the United Kingdom. *Id.* The Complaint does not allege the citizenship of the Hoffman SPV or any of the Noteholders (or their sub-funds), on whose direction GLAS is acting in this litigation.

### B. Facts Alleged to Support Plaintiffs' Claims

#### 1. Background of the Contractual Relationships

Carter Bank is a longstanding lender to non-parties Bluestone Resources, Inc. ("Bluestone Resources"), Bluestone Coal Sales Corporation ("Bluestone Coal"), and Blackstone Energy Ltd. ("Blackstone") (collectively the "Bluestone Entities"), as well as other entities (the "Justice Entities") owned by James C. Justice, Cathy L. Justice, and James C. Justice, III. Compl. ¶¶ 38-47. The Bluestone Entities are a network of coal-mining companies. Compl. ¶ 3. By year end 2017, the Bluestone Entities owed the sum of $59.4 million to Carter Bank. Compl. ¶ 58.

In June 2018, Bluestone Resources entered into a supply chain financing arrangement with Greensill UK, a financial services company focusing on supply chain financing "and related commercial arrangements," pursuant to which Greensill UK advanced $70 million to the Bluestone Entities. Compl. ¶¶ 14, 59. In September 2018, Bluestone Coal entered into a receivables purchase

4

agreement with Greensill UK (the "RPA"), pursuant to which Greensill UK ultimately advanced an additional $780 million to the Bluestone Entities. Compl. ¶¶ 15, 61, 65. On December 7, 2018, Blackstone was added as party to the RPA. Compl. ¶ 62. According to GLAS, the funding for the $780 million advanced to the Bluestone Entities by Greensill UK came from the Noteholders. Compl. ¶ 66. Greensill UK organized a special purpose funding vehicle, the Hoffman SPV, which issued notes that were purchased by the CSAM Funds[2] and Greensill Bank. *Id.* The Complaint alleges that the right to payment of the money advanced by Greensill UK was assigned to the Note Trustee (then Citibank) for the benefit of the Noteholders "through a series of agreements executed in 2017." Compl. ¶ 67. This "series of agreements" is described in somewhat vague terms in paragraphs 114 through 125, however none of these "agreements" is attached as an exhibit to the Complaint, making it impossible to determine precisely what "rights" GLAS possesses in relation to the Noteholders and the "Payment Obligations."

2. Transfers GLAS Seeks to Declare Fraudulent or Voluntary

The Complaint alleges that, on or about September 28, 2018, "Bluestone Resources and/or Bluestone Coal Sales *caused to be transferred* a total of approximately $68 million of the RPA funds to Carter Bank to satisfy Bluestone Resources' outstanding long-term debt owed to Carter Bank …." Compl. ¶ 69 (emphasis added). However, according to GLAS, "this transfer overpaid

---

[2] The Complaint does not define CSAM, but it is believed that it is Credit Suisse Asset Management (Schweiz) AG, as delegated portfolio manager for the "Funds." Based on the allegations of the Complaint, the CSAM Funds and Greensill Bank appear to be the Noteholders. Compl. ¶ 22. Greensill Bank and Greensill UK currently are in insolvency in the UK. *See* Standstill Agreement, incorporated into the Complaint. Compl. ¶¶ 24, 107-09, 111-12. A copy of the Standstill Agreement is attached as **Exhibit 1**. The "Funds" are Nova (Lux) and Virtuoso. Ex. 1, at 50. In turn, Virtuoso is "Credit Suisse Virtuoso SICAV-SIF acting in respect of its sub-fund, Credit Suisse (Lux) Supply Chain Finance Fund." *Id.*, at 52. And Nova (Lux) means "Credit Suisse Nova (Lux) acting in respect of its sub-fund, Credit Suisse Nova (Lux) Supply Chain Finance High Income Fund." *Id.*, at 5; *see also* Compl. ¶ 22.

5

the amount due by Bluestone Resources" by $8.6 million. Compl. ¶ 70. The Complaint does not identify the party that made this transfer "on behalf of" Bluestone Resources. GLAS alleges that neither Bluestone Resources nor Bluestone Coal received any consideration in exchange for the additional $8.6 million payment. Compl. ¶ 71. According to GLAS, Carter Bank "refused to release the collateral that secured the $59.4 million loan" and insisted on payment of additional debt. Compl. ¶ 72.

The Complaint alleges that, on or about December 13, 2018, the Bluestone Entities "*caused to be transferred* a total of approximately $179 million of the RPA funds to Carter Bank, which was used to pay off the debts owed to the bank by other Justice Entities outside the Bluestone network …." Compl. ¶ 73 (emphasis added). Again, the Complaint does not identify the transferor of these funds. The Complaint asserts that, "on information and belief," no new consideration was given for this December 2018 transfer. Compl. ¶¶ 74-75. Alternately, any consideration received was "not valuable at law" and was "grossly inadequate consideration for the $179 million transfer to Carter Bank." Compl. ¶¶ 78-81.

As the third payment alleged to be fraudulent, GLAS points to transfers made by Bluestone "at some point between September 26, 2018 … and the end of 2018" to Tams Management and Justice Low Seam Mining. Compl. ¶¶ 83-84. Tams Management and Justice Low Seam Mining "took the $38.6 million of RPA funds and then, as part of a single, integrated plan, transferred all, or a substantial portion of, that sum to Carter Bank to pay off their senior secured loans (for which the Bluestone Entities were not legally obligated)." Compl. ¶ 83. Thus, the Complaint alleges not that the Bluestone Entities transferred funds to Carter Bank, but that the Bluestone Entities transferred funds to Tams Management and Justice Low Seam Mining who used the funds to pay their obligations to Carter Bank. *Id.* According to GLAS, these intercompany advances "were not

6

expected to be repaid" and therefore the Bluestone Entities received no consideration for them. Compl. ¶¶ 84-85. The Complaint alleges that Carter Bank benefited in that its impaired loan balance was reduced. Compl. ¶ 86.

According to GLAS, the three transfers outlined in the Complaint were made to the detriment of other creditors of the Bluestone Entities. Compl. ¶¶ 88-92. In addition, the Complaint alleges that at the time of the transfers to Carter Bank the Bluestone Entities were insolvent or became insolvent as a result of the transfers. Compl. ¶¶ 93-102. According to GLAS, even after attempting to work with the Bluestone Entities via the Standstill Agreement, more than $700 million remains due and owing under the RPA, related guaranties, and the Standstill Agreement. Compl. ¶¶ 107, 110-11. By this Complaint, GLAS seeks to recover $226,200,000.00 from Carter Bank.

C. **Causes of Action Alleged in the Complaint**

Based on the foregoing allegations, GLAS—acting at the direction of the Noteholders—asserts causes of action for fraudulent conveyance under Virginia Code Section 55.1-400 and voluntary conveyance under Virginia Code Section 55.1-401. Specifically, in Count One GLAS alleges that the three transfers identified in the Complaint are fraudulent conveyances, evidenced by several badges of fraud. Compl. ¶¶ 133-37. In Count Two, the Complaint alleges that the transfers were voluntary conveyances under Virginia Code Section 55.1-401 because they were not supported by consideration deemed valuable at law, Compl. ¶ 145, and the Bluestone Entities were insolvent at the time of the transfers, Compl. ¶ 146. With respect to both causes of action, GLAS asserts that it was an existing creditor at the time of the transfers, Compl. ¶¶ 139, 147, although this is impossible for Carter Bank to determine without the underlying documents GLAS repeatedly refers to and relies upon in the Complaint but fails to attach as exhibits.

7

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(1)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Here, GLAS relies on diversity jurisdiction under 28 U.S.C. § 1332. Federal courts have subject-matter jurisdiction over controversies between "[c]itizens of different States" by virtue of Article III, Section 2 of the Constitution and 28 U.S.C. section 1332(a)(1)." *CityPlace Retail, LLC v. Wells Fargo Bank, N.A.*, No. 20-11748, 2021 U.S. App. LEXIS 21054, at *11 (11th Cir. July 15, 2021) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980)) (internal quotations removed).

GLAS bears the burden of proving that subject matter jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) either by contending that the complaint fails to allege sufficient facts upon which subject matter jurisdiction can be based or by alleging that the jurisdictional allegations of the complaint are not true. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). Where the defendant contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based, the facts alleged in the complaint "are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219.

**B. Rule 12(b)(6)**

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court will accept as true all well-pled facts contained in the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.* citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court must disregard "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Aera Med. Ctr., Inc.,* 562 F.3d 599, 615 n.26 (4th Cir. 2009). Dismissal is justified if a complaint "does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Id.*

Rule 9(b) requires that in alleging fraud, the plaintiff "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The purposes of the heightened pleading standard "'are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation.'" *Grenadier v. BWW Law Group*, No. 1:14CV827 LMB/TCB, 2015 WL 417839, at *3 (E.D. Va. Jan. 30, 2015) (citation omitted), *aff'd*, 612 Fed. Appx. 190 (4th Cir. 2015).

## IV.   ARGUMENT

**A. The Complaint Fails to Plead the Existence of Diversity Jurisdiction.**

The "'[c]itizens' referred to in Article III and section 1332(a)(1) "must be [the] real and substantial parties to the controversy." *Navarro*, 446 U.S., at 460.  GLAS brings this suit as Note Trustee under the Hoffman Master Trust Deed, and pursuant to "instructions" from the Noteholders. The Complaint does not shed much light on the nature of this relationship, but it is evident that the entity created to issue the Notes and for whom GLAS acts as trustee is a special purpose entity known as Hoffman S.à.r.l (or the Hoffman SPV), which is a party to the Hoffman Master Trust Deed with Citibank as trustee. Ex. 1, at 50.

In *Americold Realty Trust v. Conagra Foods*, the Supreme Court reaffirmed the principle that "when a trustee files a lawsuit in her name, her jurisdictional citizenship is the [s]tate to which she belongs—as is true of any natural person." 577 U.S. 378, 382-83 (2016) (emphasis in original). That principle, however, applies only to traditional trusts. In *Americold*, the Supreme Court addressed the citizenship of a real estate investment trust organized under Maryland law. *Id.* at 382. Because Maryland law treated real estate investment trusts as separate legal entities that could sue and be sued, the Supreme Court determined that the trust was an unincorporated entity which possessed the citizenship of all its members, rather than a "traditional trust." *Id.* at 383; *Richards Bldg. Servs. v. Hegarty*, 5:21-CV-281-BO, 2022 U.S. Dist. LEXIS 70902, at *2 (E.D.N.C. Apr. 18, 2022) ("[T]he citizenship of a business trust is determined based on the citizenship of its members, while the citizenship of a traditional trust is based on the citizenship of its trustee."); *see CityPlace Retail*, 2021 U.S. App. LEXIS 210954, at *10 (determining whether the trust is a traditional one requires knowing whether the trust has jurisdictional-person status and can sue or be sued as an entity); *Yeuh-Lan Wang v. New Mighty U.S. Trust*, 843 F.3d 487, 494 (D.C. Cir.

2016) (citizenship determination is driven by whether a trust is a traditional trust or an unincorporated business entity that is labeled a trust).

Moreover, as the Supreme Court held in *Navarro*, the Court must ensure that GLAS is the "real part[y] to [the] controversy for purposes of [the Court's] diversity jurisdiction." *Id.*, at *10-11; *U.S. Bank, N.A. as Tr. For RMAC Tr. Series 2016-CTT v. Desrosiers*, 17-CV-7338 (JMW), 2021 U.S. Dist. LEXIS 230131, at *7 (E.D.N.Y. Dec. 1, 2021). The rule that the trustee's citizenship is all that matters "applies only in circumstances where the trustee is a real party in interest to the controversy, meaning that it is an 'active trustee[] whose control over the assets held in [its] name is real and substantial.'" *Id.* (quoting *U.S. Bank Tr., N.A. v. Dupre*, 15-CV-0558 (LEK/TWD), 2016 U.S. Dist. LEXIS 127848 (N.D.N.Y. Sept. 20, 2016)). By contrast, "'naked trustees' who act as 'mere conduits' for a remedy flowing to others" are not the real party to the controversy. *CityPlace Retail*, 2021 U.S. App. LEXIS 210954, at *12 (quoting *Navarro*, 446 U.S. at 465). "When a plaintiff fails to show that a trustee's control over the trust assets is real and substantial, the *Americold Realty Trust* principle must yield, in which case the citizenship of the trust's beneficiaries—rather than the citizenship of the trustee—controls the court's diversity analysis." *U.S. Bank, N.A.*, 2021 U.S. Dist. LEXIS 230131, at *7. Courts "decline to exercise jurisdiction when the trust agreement indicates that the trustee does not 'wield sufficient control over the assets of the trust to be considered the real party in interest.'" *Wilmington Sav. Fund Soc'y v. Okunola*, 18-CV-2084 (AMD) (PK), 2023 U.S. Dist. LEXIS 234905, at *7 (E.D.N.Y. March 15, 2023) (quoting *U.S. Bank, N.A*, 2021 U.S. Dist. LEXIS 230131, at *7)); *Justice v. Wells Fargo Bank Nat'l Assn.*, 674 Fed. Appx. 330, 332 (5th Cir. 2016) (examining the pooling and servicing agreement to determine the amount of control vested in the trustee).

The Complaint here fails to allege facts demonstrating that GLAS is the "real and substantial part[y] to the controversy." *Navarro*, 446 U.S., at 460. Specifically, GLAS is a trustee purporting to act for what plainly appears to be a non-traditional trust—a business entity known as Hoffman s.à.r.l. and defined in the Complaint as the Hoffman SPV—and at the direction of the Noteholders. Although GLAS alleges that it has certain "rights" and powers granted to it under the Hoffman Master Trust Deed, Compl. ¶ 123, GLAS failed to allege any facts supporting this assertion or provide a copy of the trust document itself. Indeed, as noted, the Complaint alleges that GLAS is acting "at the direction of" the Noteholders (Compl. ¶ 30), suggesting the contrary is true. And the Standstill Agreement likewise provides that GLAS may not take certain actions unless the Noteholders "instruct" it to do so, indicating that GLAS does not "wield sufficient control over the assets of the trust to be considered the real party in interest." *Wilmington Sav. Fund Soc'y*, 2023 U.S. Dist. LEXIS 234905, at *7. Ex. 1, §§ 14.1-1, 14.2. The Hoffman SPV is a party to the Standstill Agreement, indicating that it is a separate business entity that can enter into contracts, sue, and be sued.

The Complaint does not allege facts demonstrating that the Hoffman SPV is a traditional trust rather than another type of business entity labeled as a trust. Instead, the Complaint is devoid of facts describing the nature of the Hoffman SPV. The Complaint also does not allege facts—or attach documents—sufficient to meet GLAS's burden of showing that it has sufficient control over the assets of the trust to be the real party in interest. Instead, the Complaint indicates that GLAS must act at the direction of the Noteholders and is a "'mere conduit[]' for a remedy flowing to others." *CityPlace Retail*, 2021 U.S. App. LEXIS 210954, at *12. The Complaint likewise does not allege the citizenship of the Noteholders, the sub-funds, and/or the investors in the Funds, thus giving the Court no basis upon which it can determine whether diversity jurisdiction exists. *See,*

*e.g., Westbrook v. Caliber Home Loans, Inc.*, No. CV-23-00624-PHX-JAT, 2023 U.S. Dist. LEXIS 83841, at *3 (D. Ariz. May 12, 2023) (preliminarily finding the Colt 2020-1R Mortgage Loan Trust and the Colt 2018-2 Mortgage Loan Trust were non-traditional trusts for purposes of diversity jurisdiction, and that each trust would take on the citizenship of every beneficiary/investor in that trust and not the citizenship of the non-human Trustee).

In short, GLAS has the burden and obligation to allege facts supporting this Court's diversity jurisdiction. Likewise, Carter Bank has an obligation to ensure the existence of subject matter jurisdiction. As one court observed,

> It may seem an odd exercise to dig this deeply to determine diversity jurisdiction, but that is what is required when an LLC or partnership or trust is party to a suit. The problem only deepens where, as here, an LLC's "members" are still more LLCs, partnerships, and trusts. But the difficulty must be confronted, and better sooner than later. Failing to check jurisdiction could have allowed this suit to progress well beyond a final judgment and into the court of appeals before recognizing the fatal flaw, wasting the clients' money and everyone's time.

*LaRoach v. Bridgepoint Healthcare, LLC*, 18-CV-1096 (CRC), 2018 U.S. Dist. LEXIS 206541, at *7-8 (D.D.C. Dec. 7, 2018) (stating that the court "feels constrained to remind the lawyers here—and everywhere—that they have a duty to [determine jurisdiction] themselves."). Because GLAS fails to plead facts demonstrating the existence of diversity jurisdiction—and hence subject matter jurisdiction over this matter—the Complaint must be dismissed.

### B. GLAS Fails to Plead Facts Demonstrating a Transfer from the Debtors, the Bluestone Entities, With Respect to the September 2018 and December 2019 Transfers

Allegations of fraudulent or constructively fraudulent transfer in Virginia are governed by Virginia Code Section 55.1-400 *et seq*. Specifically, Virginia Code Section 55.1-400 requires that a transfer be made "with intend to delay, hinder, or defraud creditors, purchasers, or other persons …." To have a conveyance declared void, a plaintiff must demonstrate "(1) a conveyance, (2) given with intent to hinder, delay or defraud creditors, (3) who were lawfully entitled to the subject

13

of the conveyance, and (4) the purchaser did not provide valuable consideration or had knowledge of the fraud or fraudulent intent of the immediately *prior grantor.*" *CT Trust v. Peterson*, No. 1:97-CV-02003, 1999 U.S. Dist. LEXIS 22623, at *23 (E.D. Va. Jan. 8, 1999).  In turn, fraudulent intent may be demonstrated by reference to possible "badges of fraud." *Id.*, at *24.  The badges of fraud include "(1) retention of an interest in the transferred property *by the transferor*; (2) transfer between family members for allegedly antecedent debt; (3) pursuit *of the transferor* or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property *by the transferor*; and (6) fraudulent incurrence of indebtedness after the conveyance." *Id.* (quoting *Hyman v. Porter*, 237 B.R. 56, 63 (Bankr. E.D. Va. 1984) (emphasis added); *see Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 285, 717 S.E.2d 126, 135 (2011). Additional badges of fraud are a "close relationship of the parties" between whom the transfer is made and "insolvency *of the grantor.*" *C.F. Trust*, 1999 U.S. Dist. LEXIS 22623, at *23 (emphases added).

To be voidable under Virginia Code Section 55.1-401, the transfer must be made "*by an insolvent transferor or by a transferor* who is thereby rendered insolvent…." *Id.* (emphasis added). The elements required to establish a claim for voluntary conveyance are "(1) a transfer made *by the debtor* (2) for consideration not deemed valuable in law (3) while *the debtor* was insolvent or by which he was rendered insolvent." *Shaia v. Meyer*, 206 B.R. 410, 415 (Bankr. E.D. Va. 1997) (emphasis added); *C.F. Trust*, 1999 U.S. Dist. LEXIS 22623, at *10.

A plain reading of Sections 55.1-400 and 401 and Virginia case law interpreting them demonstrates that a fraudulent or voluntary transfer must be made *by the debtor*, in this case at least one of the Bluestone Entities, and not by a third party. As the Supreme Court of Virginia observed in *Grayson v. Westwood Buildings, L.P.*, referring to Virginia Code Sections 55.1-400

14

and 401,"[t]hese statues generally presuppose a conveyance *by the debtor* from the debtor's estate." 300 Va. 25, 49, 859 S.E.2d 651, 665 (2021) (emphasis added) (citing Kent Sinclair, Sinclair on Virginia Remedies 48-2[B], at 48-10 (5th ed. 2016 (describing the existence of "a transfer from the debtor's estate" as "[a] basic requirement).[3] Accordingly, transfers not made *by the debtor* do not qualify as fraudulent or voluntary transfers under Virginia law. *Id.*; *see also* Va. Code Section 55.1-400 *et seq*. The statutes "seek to balance two competing public policies: 'the public interest that debts should be paid' and '*the debtor's* freedom to alienate his own property.'" *Id.* (quoting Sinclair, supra, § 48-2[A], at 48-7) (emphasis added).

For the first two transactions, GLAS alleges that (1) on or about September 28, 2018, Bluestone Resources and/or Bluestone Coal "*caused to be transferred*" a total of approximately $68 million of RPA Funds to Carter Bank, Compl. ¶ 69, and (2) on December 13, 2018, the Bluestone Entities "*caused to be transferred*" a total of approximately $179 million of RPA funds to Carter Bank. Compl. ¶ 73. Because GLAS does not allege that these transfers were made by the Bluestone Entities, the reasonable conclusion is that they were made by some other unidentified entity—but not *the debtor*—"on behalf of" the Bluestone Entities. At a minimum, the identity of the transferor must be disclosed. If that actor is unrelated to the Bluestone Entities, then the Complaint must fail regarding this transfer.

Likewise, with respect to the third transaction, GLAS affirmatively alleges that the transfer to Carter Bank was *not by the debtor*, the Bluestone Entities, but by other unrelated entities also owned by the Justices. Specifically, GLAS alleges that the Bluestone Entities made payments to

---

[3] The Supreme Court of Virginia further cited other treatises for the principle that the property must be transferred or disposed of by the debtor. *Id.*, n. 11 (citing 1 Dewitt C. Moore, A Treatise on Fraudulent Conveyances and Creditors' Remedies at Law and in Equity 3-4 (1908); Frederick S. Wait, A Treatise on Fraudulent Conveyances and Creditors' Bills § 15, at 34 (3d ed. 1897)).

Tams Management and Justice Low Seam Mining (Compl. ¶ 82). GLAS then alleges that *those two entities* (and not the Bluestone Entities) "took the $38.6 million of RPA funds and then, as part of a single, integrated plan, transferred all, or a substantial portion of, that sum to Carter Bank to pay off their senior secured loans (for which the Bluestone Entities were not legally obligated)." Compl. ¶ 83. GLAS does not allege any facts explaining or describing what is meant by a "single, integrated plan" or any factual basis for this allegation.

Given these allegations, GLAS has failed to allege sufficient facts to support its claims against Carter Bank. Pursuant to Sections 55.1-400 and 55.1-401, the insolvent debtors themselves must make the allegedly fraudulent transfer. *Grayson*, 300 Va., at 49, 859 S.E.2d at 665. Because the Complaint fails to plead that the allegedly fraudulent transfers were made by the debtor, as required by Virginia law, Plaintiff's fraudulent and voluntary conveyance claims relating to the three transfers should be dismissed.

### V. CONCLUSION

For the reasons set forth above, Carter Bank respectfully requests that the Court dismiss Plaintiff's Complaint against it in this matter, and award Carter Bank such other and further relief as the Court deems appropriate.

Dated: March 29, 2024

Respectfully Submitted,

CARTER BANK & TRUST

/s/ *Robert A. Angle*
Robert A. Angle, VSB No. 37691
Megan E. Burns, VSB No. 35883
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone: (804) 697-1246
Email: robert.angle@troutman.com
Email: megan.burns@troutman.com
*Counsel for Defendant Carter Bank & Trust*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of March, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy of the foregoing to all registered parties.

/s/ *Robert A. Angle*
Robert A. Angle, VSB No. 37691
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone: (804) 697-1246
Email: robert.angle@troutman.com
Email: megan.burns@troutman.com
*Counsel for Defendant Carter Bank & Trust*

170104731