**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
Danville Division

|  |  |
|---|---|
| GLAS TRUST COMPANY LLC, *in its capacity as Note Trustee*, | Civil Action No. 4:24-cv-00005 |
| Plaintiff, |  |
| v. |  |
| CARTER BANK & TRUST, |  |
| Defendant. |  |

## <u>PLAINTIFF GLAS TRUST COMPANY LLC'S OPPOSITION TO DEFENDANT CARTER BANK & TRUST'S MOTION TO DISMISS</u>

Plaintiff GLAS Trust Company LLC ("GLAS") hereby opposes Defendant Carter Bank & Trust's Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) (ECF No. 35) (the "Motion to Dismiss") the Amended Complaint for Violations of Virginia Code §§ 55.1-400 and 55.1-401 (ECF No. 28) (the "Amended Complaint" or "Am. Compl."). For the reasons set forth herein, GLAS requests that this Court deny the Motion to Dismiss in its entirety.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT FACTUAL BACKGROUND ...................................................................... 3

PROCEDURAL HISTORY ............................................................................................. 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 6

I.      THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES SUBJECT
MATTER JURISDICTION ................................................................................... 7

      A.      The Court Has Diversity Jurisdiction ..................................................... 7

      B.      Even if the Court Were To Look at the Citizenship of the Noteholders, the
Court Would Still Have Diversity Jurisdiction ..................................... 12

II.     THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT GLAS IS
AN "EXISTING CREDITOR" OF THE BLUESTONE ENTITIES .............................. 14

      A.      The Note Trustee Was a Creditor of the Bluestone Entities When They
Made the Challenged Transfers ............................................................ 14

      B.      The Allegations of the Amended Complaint State Actual and Voluntary
Conveyance Claims Under the Standards for "Existing" Creditors ...................... 15

III.    THE BLUESTONE ENTITIES ARE THE "TRANSFERORS" OF THE
CHALLENGED TRANSFERS ................................................................................ 16

IV.   CARTER BANK'S ESTOPPEL ARGUMENT IS PREMISED ON DISPUTED
FACTS ................................................................................................................ 19

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982).............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................6

*Borg v. Warren*,
  545 F. Supp. 3d 291 (E.D. Va. 2021)...................................................................8

*C.F. Tr. v. Peterson*,
  1999 WL 33456231 (E.D. Va. Jan. 8, 1999)...................................................7, 16

*Chao v. Rivendell Woods, Inc.*,
  415 F.3d 342 (4th Cir. 2005)................................................................................6

*CityPlace Retail, LLC v. CSMC 2007-C1 S. Rosemary, LLC*,
  2023 U.S. App. LEXIS 8282 (11th Cir. Apr. 7, 2023) ........................................11

*CityPlace Retail, LLC v. Wells Fargo Bank, N.A.*,
  2021 U.S. App. LEXIS 21054 (11th Cir. July 15, 2021).....................................11

*Cortlandt St. Recovery Corp. v. Aliberti*,
  2014 WL 6907548 (S.D.N.Y. Dec. 9, 2014) ......................................................10

*Flame S.A. v. Indus. Carriers*,
  39 F. Supp. 3d 769 (E.D. Va. 2014).....................................................................17

*Harvey v. GoBo, Inc.*,
  2017 WL 972161 (W.D. Va. Mar. 10, 2017).................................................6, 14, 19

*Hawkins v. i-TV Digitális Távközlési zrt.*,
  935 F.3d 211 (4th Cir. 2019)................................................................................12

*Hudson v. Hudson*,
  455 S.E.2d 14 (Va. 1995).....................................................................................7

*Hutcheson v. Savings Bank of Richmond*,
  105 S.E. 677 (Va. 1921).......................................................................................16

*In re Abingdon Realty Corp.*,
  21 B.R. 290 (E.D. Va. 1982)................................................................................20

*In re James River Coal Co.*,
  360 B.R. 139 (Bankr. E.D. Va. 2007).............................................................17, 18

*In re Refco, Inc. Secs. Litig. v. CSFB*,
    2009 U.S. Dist. LEXIS 129944 (S.D.N.Y. Nov. 13, 2009) ....................................................21

*In re Vivendi Universal, S.A. Sec. Litig.*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2009) ....................................................................................13

*Justice v. Wells Fargo Bank Nat'l Ass'n*,
    674 F. App'x. 330 (5th Cir. 2016) ............................................................................................9

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ............................................................................................6, 10

*Kirschner v. Grant Thornton LLP*,
    2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
    *aff'd sub nom. Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010) ..................................21

*Lavine v. Dorsey & Whitney*,
    1997 Minn. App. LEXIS 243 (Minn. App. 1997) ....................................................................21

*Mfrs. & Traders Tr. Co. v. HSBC Bank USA, N.A.*,
    564 F. Supp. 2d 261 (S.D.N.Y. 2008) ....................................................................................10

*Martzall v. Deutsche Bank Nat'l Tr. Co.*,
    2022 WL 970244 (W.D. Tex. Mar. 30, 2022) ...........................................................................9

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458 (1980) ..................................................................................................................9

*Persichelli v. Metropolitan Paper Recycling Inc.*,
    926 N.Y.S.2d 346 (N.Y. Sup. Ct. 2010) ................................................................................20

*Phillips v. Moazzeni (In re Tarangelo)*,
    378 B.R. 128 (Bankr. E.D. Va. 2007) ....................................................................................17

*Republican Party of North Carolina v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ....................................................................................................6

*U.S. Bank, N.A. as Tr. for RMAC Tr. Series 2016-CTT v. Desrosiers*,
    2021 U.S. Dist. LEXIS 230131 (E.D.N.Y. Dec. 1, 2021) .......................................................11

*U.S. Bank Tr., N.A. v. Dupre*,
    2016 U.S. Dist. LEXIS 127848 (N.D.N.Y. Sept. 20, 2016) ....................................................11

*White v. Llewellyn*,
    857 S.E.2d 388 (Va. 2021) ....................................................................................................16

*Wilmington Sav. Fund Soc'y v. Okunola*,
    2023 U.S. Dist. LEXIS 234905 (E.D.N.Y. Mar. 15, 2023) .....................................................11

**Statutes & Rules**

28 U.S.C. § 1332 ................................................................................................................7

Fed. R. Civ. P. 12 ..............................................................................................................6

Fed. R. Civ. P. 15 ..............................................................................................................5

Va. Code § 55.1-400 (formerly Va. Code § 55-80) ................................................1, 6, 7

Va. Code § 55.1-401 (formerly Va. Code § 55-81) .............................................1, 7, 15

## PRELIMINARY STATEMENT

Carter Bank's Motion to Dismiss should be denied because the Amended Complaint alleges facts that state plausible claims for relief under Virginia Code §§ 55.1-400 and 55.1-401, and establish that this Court has subject matter jurisdiction to hear those claims based on diversity of citizenship. Carter Bank's arguments to the contrary misstate the allegations in the Amended Complaint, fail to accept those allegations as true, and seek to introduce Carter Bank's own, contrary factual allegations. Carter Bank will have its opportunity to dispute facts later, but accepting the well-pled allegations in the Amended Complaint as true at this stage of the proceeding, Carter Bank's Motion to Dismiss fails.

As alleged in the Amended Complaint, Carter Bank used its considerable leverage over the Justice family and Bluestone Entities[1], as their longtime and near-exclusive lender, to pressure the Bluestone Entities into making three transfers to satisfy approximately $226.2 million in debts to Carter Bank upon which the Bluestone Entities were not legally obligated, with the Bluestone Entities receiving no valuable consideration in return. This has caused losses to the creditors of the Bluestone Entities, as the Bluestone Entities have been unable to meet their debts.

In an effort to avoid discovery on the facts and circumstances surrounding Carter Bank's role in these improper transfers, Carter Bank advances four meritless arguments. *First*, Carter Bank argues that the Amended Complaint fails to allege facts sufficient to establish that this Court has diversity jurisdiction over this lawsuit, notwithstanding the fact that GLAS is a citizen of the United Kingdom and Carter Bank is a citizen of Virginia. The crux of Carter

---

[1] Unless otherwise stated, capitalized terms not defined herein have the same definition as provided in the Amended Complaint.

Bank's argument is that GLAS (a Note Trustee) is not a "real party in interest", and instead it is the Noteholders, who instructed GLAS to bring this lawsuit for their benefit.  (Memorandum in Support of Motion to Dismiss (ECF No. 36) (hereinafter "Mem.") at 15-20.)  But the Amended Complaint alleges facts that establish that GLAS, as Note Trustee, is a real party in interest, and that, in any event, each of the Noteholders is also a foreign citizen.  Therefore, either way, the Court has diversity jurisdiction over this lawsuit.

*Second*, Carter Bank argues that the "subsequent creditor" rule applies to bar GLAS's voluntary conveyance claim and heighten the fraudulent intent requirement for the actual fraudulent conveyance claim because GLAS was not a creditor of the Bluestone Entities at the time of the Challenged Transfers.  (Mem. at 20-25.)  But the allegations in the Amended Complaint establish that the Note Trustee was assigned the RPA Claims in accordance with documents that established the Hoffman Notes program, which were executed *before* any funds were borrowed under the RPA and then transferred to Carter Bank.  Accepting those allegations as true, the "subsequent creditor" rule does not apply.

*Third*, Carter Bank argues that the Amended Complaint fails to establish that the Bluestone Entities are the "transferors" of the Challenged Transfers.  (Mem. at 25-28.)  But, again, this flies in the face of the Amended Complaint, which alleges that the Challenged Transfers were directed by the Bluestone Entities and consisted of money that the Bluestone Entities borrowed and controlled under the RPA.  This makes the Bluestone Entities the "transferor" of each Challenged Transfer.

*Fourth*, and finally, Carter Bank argues that GLAS is estopped from bringing these claims with respect to the first two Challenged Transfers because third-party Greensill UK, which extended the loans to the Bluestone Entities, participated in the fraudulent transfers

received by Carter Bank.  (Mem. at 28-29.)  While some courts have held that a party who is intimately familiar with, and participates in, a fraudulent conveyance cannot recover, here the only fact alleged in the Amended Complaint that Carter Bank can cite in support of this argument is that Greensill UK itself was the party that transferred the RPA Funds to Carter Bank after being instructed to do so by the Bluestone Entities.  That is not nearly enough to establish that Greensill UK knew that the Challenged Transfers were fraudulent at the time they were made.  Such a finding would require proving, among other things, that Greensill UK knew the Bluestone Entities received zero, or grossly inadequate, consideration in exchange for the Challenged Transfers, while Bluestone's owners benefited personally from the Challenged Transfers.  In discovery, the parties will seek discovery from Greensill UK about its participation in the Challenged Transfers and whether it had knowledge of the circumstances that made them improper, but Carter Bank has no basis at the motion to dismiss stage to argue that Greensill UK had such knowledge.  As such, this argument fails also.

## **RELEVANT FACTUAL BACKGROUND**

As alleged in the Amended Complaint, this action involves the fraudulent transfers of money from the Bluestone Entities to Carter Bank, which was engaged in aggressive efforts to collect on debt obligations of Governor James C. Justice II, his family and his family businesses, including the Justice Entities.  Specifically, by 2017, Carter Bank was the longtime and near-exclusive lender of the Bluestone Entities and other Justice Entities.  (Am. Compl. ¶ 4.)  Following the passing of Carter Bank's founder in early 2017, Carter Bank began taking a more aggressive approach to reducing its impaired loan balance, including impaired Justice Entity loans.  (*Id.* ¶¶ 5-8.)  When those efforts were not enough to achieve its desired financial metrics, Carter Bank began imposing new, onerous terms on the Justice Entities with respect to their loans from Carter Bank.  (*Id.* ¶ 11.)  In this context, the Justices turned to Greensill UK to obtain

new financing, resulting in the execution of the RPA on September 26, 2018, pursuant to which Greensill UK ultimately loaned the Bluestone Entities $780 million.  (*Id.* ¶ 14.)

As further alleged in the Amended Complaint, the Bluestone Entities had control over how the RPA Funds would be used, and used that control to transfer approximately $226.2 million of those funds to Carter Bank to satisfy debts of non-Bluestone Justice Entities for which the Bluestone Entities had no legal liability.  (*Id.* ¶ 74.)  First, on or about September 28, 2018, Bluestone Resources and/or Bluestone Coal Sales transferred approximately $68 million of the RPA Funds to Carter Bank, overpaying the amount owed by the Bluestone Entities to Carter Bank by approximately $8.6 million.  (*Id.* ¶¶ 76, 77.)  Second, on or about December 13, 2018, the Bluestone Entities transferred approximately $179 million of RPA Funds to Carter Bank to satisfy debts on which the Bluestone Entities were not legally liable or otherwise obligated, but which Carter Bank insisted on being paid in order to release security obligations for debts that the Bluestone Entities had already repaid in September 2018.  (*Id.* ¶¶ 80, 82.)  Third, at some date between the execution of the RPA and the end of 2018, the Bluestone Entities transferred another $38.6 million in RPA Funds to Carter Bank to satisfy debts owed by non-Bluestone Justice Entities Tams Management and Justice Low Seam Mining, on which the Bluestone Entities were likewise not legally liable or otherwise obligated.  (*Id.* ¶¶ 89, 90.)

The Amended Complaint further alleges, *inter alia*, that the Bluestone Entities were insolvent at the time of the Challenged Transfers or were rendered insolvent by the Challenged Transfers (*id.* ¶¶ 100-09), the Bluestone Entities were being pursued by several other creditors at the time of the Challenged Transfers (*id.* ¶¶ 95-99), the Challenged Transfers were made for the benefit of the Bluestone Entities' owners and closely related parties (*id.* ¶¶ 74, 94), and the Challenged Transfers were not supported by valuable consideration (*id.* ¶¶ 78-92).

GLAS, as Note Trustee of the Hoffman Notes, brought the Amended Complaint against Carter Bank seeking recovery of the funds improperly transferred to Carter Bank.  (*Id.* ¶ 27.)  The rights of Greensill UK under the RPA, including the claims at issue here (*i.e.*, the RPA Claims) were assigned from GCUK to the Note Trustee in accordance with documents that were executed in 2017 to establish the Hoffman Notes program—the securitized financing vehicle that was established to fund Greensill UK's advances to the Bluestone Entities under the RPA.  (*Id.* ¶¶ 23, 73.)  Namely, the RPA Claims were assigned from GCUK to the Hoffman SPV in accordance with the Master Assignment Agreement, which was executed on December 21, 2017.  (*Id.* ¶¶ 122, 125.)  The RPA Claims were then further assigned from the Hoffman SPV to the Note Trustee in accordance with the Master Trust Deed, dated October 13, 2017, as supplemented by the Supplemental Master Trust Deed, dated December 21, 2017 (*i.e.*, the "Hoffman Master Trust Deed").  (*Id.* ¶¶ 31, 128.)  Thus, the RPA Funds advanced to the Bluestone Entities (and wrongfully transferred to Carter Bank) originated from contemporaneous funding through the Hoffman securitization vehicle, and thus GLAS, as Note Trustee of the Hoffman Notes, was an existing creditor at the time of the Challenged Transfers.  (Am. Compl. ¶¶ 23, 73.)

## **PROCEDURAL HISTORY**

GLAS filed the initial complaint in these proceedings on February 12, 2024. (ECF No. 1.)  Carter Bank filed a motion to dismiss the original complaint on March 29, 2024. (ECF No. 20.)  In lieu of opposing the motion to dismiss the original complaint, GLAS filed the Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure on April 19, 2024.  (ECF No. 28.)  Carter Bank filed the Motion to Dismiss on May 13, 2024.  (ECF No. 35.)  The parties are scheduled to appear for an initial scheduling conference on July 18, 2024.  (ECF No. 33.)

**LEGAL STANDARD**

"A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Harvey v. GoBo, Inc.*, 2017 WL 972161, at *1 (W.D. Va. Mar. 10, 2017) (quoting *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "Factual allegations must be enough to raise a right to relief above the speculative level, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor." *Harvey*, 2017 WL 972161 at *1 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005)) (citations and quotation marks omitted). "Rule 12(b)(6) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570) (citations and quotation marks omitted).

In addition to moving to dismiss on the basis of Rule 12(b)(6), Carter Bank also moves to dismiss pursuant to Rule 12(b)(1).  Because its Rule 12(b)(1) arguments are based on the sufficiency of the allegations in the Amended Complaint, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction".  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

**ARGUMENT**

GLAS brings these claims under Virginia's "actual" fraudulent transfer, or "fraudulent conveyance" statute, Va. Code §§ 55.1-400 and Virginia's "constructive" fraudulent

transfer, or "voluntary conveyance" statute, Va. Code § 55.1-401.[2]  To state a claim for actual fraudulent transfer, a plaintiff must plead:  (1) a conveyance, (2) that was given with the intent to delay, hinder or defraud creditors, (3) who were lawfully entitled to the subject of the conveyance and (4) the purchaser either did not provide valuable consideration or had knowledge of the fraud or the fraudulent intent of the immediately prior grantor.  *C.F. Tr. v. Peterson*, 1999 WL 33456231, at \*7 (E.D. Va. Jan. 8, 1999).  To state a claim for constructive fraudulent transfer, a plaintiff must plead that "(1) the transfer was not made upon consideration deemed valuable in law . . . ; (2) the transfer was made by an insolvent transferor, or by a transferor who was rendered insolvent by the transfer; and (3) the transferor's debt to the creditor was contracted before the time of the transfer".  *Hudson v. Hudson*, 455 S.E.2d 14, 17 (Va. 1995).  The Amended Complaint alleges facts that plead each element of both the actual and fraudulent transfer claims, and each of Carter Bank's arguments to the contrary fails, as discussed below.

## I.   THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES SUBJECT MATTER JURISDICTION

### A.   The Court Has Diversity Jurisdiction

Carter Bank argues that the Amended Complaint fails to allege facts sufficient to establish that this Court has diversity jurisdiction over this lawsuit.  As noted above, Carter Bank does not challenge that it is a citizen of Virginia, that GLAS is a citizen of the United Kingdom, or that the amount in controversy in this case exceeds \$75,000.  (Am. Compl. ¶ 28.)  In other words, based on the named parties' citizenship, there is no dispute that this Court has subject matter jurisdiction based on diversity of citizenship.  *See* 28 U.S.C. § 1332(a)(2) ("The district

---

[2] Va. Code §§ 55.1-400 and 55.1-401 were previously codified at Va. Code §§ 55-80 and 55-81, respectively.

courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state . . . .").

Notwithstanding the fact that the named parties to these proceedings are diverse, Carter Bank argues that the Amended Complaint fails to establish that GLAS is the "real party in interest" for purposes of assessing subject matter jurisdiction. Instead, Carter Bank argues that the facts alleged in the Amended Complaint suggest that it is instead the Noteholders, who instructed the Note Trustee to file this action and would be the beneficiaries of any recovery made by the Note Trustee in this action, who are the "real parties in interest" and thus whose citizenship controls whether the Court has diversity jurisdiction. (Mem. at 16-18.)

First and foremost, this is an academic point to raise because (as discussed below) there are three Noteholders and all three are clearly alleged in the Amended Complaint to *also* be citizens of foreign countries. But Carter Bank is also wrong that the Court needs to look beyond the citizenship of the Note Trustee in assessing whether it has subject matter jurisdiction.

The claims at issue here are fraudulent and constructive transfer claims. Any creditor of the Bluestone Entities has standing to bring fraudulent conveyance claims against a transferee. *See Borg v. Warren*, 545 F. Supp. 3d 291, 318 (E.D. Va. 2021) ("Virginia state law typically allows creditors the right to assert fraudulent conveyance claims."). The fraudulent transfer claims arise from loans made to the Bluestone Entities under a contract, the RPA. (*E.g.*, Am. Compl. ¶¶ 21, 27, 136-38.) The Note Trustee is a creditor of the Bluestone Entities because it has been assigned the rights to the payment of debts owed by the Bluestone Entities under the RPA (*i.e.*, the RPA Claims), for the benefit of the Noteholders. (Am. Compl. ¶¶ 14, 120-130, 136-38.)

Carter Bank's "real party in interest" argument relies principally on the Supreme Court's decision in *Navarro Savings Association v. Lee*, which instructs that a trustee's citizenship governs if it is a real party in interest to the proceedings, meaning that it "possesses certain customary powers to hold, manage, and dispose of assets for the benefits of others". 446 U.S. 458, 464 (1980); (*see also* Mem. at 15-16 (citing *Navarro* and its progeny)). As the allegations in the Amended Complaint state, the relevant "assets" at issue here are the RPA Claims, which are the assets that serve as the collateral security for Hoffman Notes, for which GLAS serves as Note Trustee. (Am. Compl. ¶¶ 23, 137.) The question, then, is whether the Amended Complaint contains sufficient allegations to establish that the Note Trustee has sufficient powers over the RPA Claims to satisfy the *Navarro* standard. It does.

The RPA Claims have been assigned to the Note Trustee, for the benefit of the Noteholders. (Am. Compl. ¶¶ 23, 136.) The Note Trustee has powers and rights incidental to its ownership of the RPA Claims, including, in addition to the power to bring claims when instructed by the Noteholders, the power to bring claims in its own discretion for the benefit of the Noteholders. (*Id.* ¶ 27.) This is similar to *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x. 330 (5th Cir. 2016), one of the cases cited by Carter Bank, in which the Fifth Circuit affirmed that Wells Fargo Bank National Association ("Wells Fargo") was the "real party in interest" for diversity jurisdiction when it was sued in its capacity as the trustee of a mortgage trust, where Wells Fargo had also been assigned the mortgage. *Id.* at 331-32. In fact, *Justice* is just one of many cases across the country that have found that the citizenship of a "notes trustee" or "indenture trustee" governs where the trustee holds the assets at issue. *See Martzall v. Deutsche Bank Nat'l Tr. Co.*, 2022 WL 970244, at *3-4 (W.D. Tex. Mar. 30, 2022) (indenture trustee was the "real party to the case" where the trust document "pledges legal title of the trust

assets . . . to Deutsche Bank, as the Indenture Trustee, for the benefit of the noteholders");

*Cortlandt St. Recovery Corp. v. Aliberti*, 2014 WL 6907548, at *2-3 (S.D.N.Y. Dec. 9, 2014)

(note trustee considered "real party in interest" where it "holds the assets . . . for the benefit of

the Noteholders").

        The Noteholders have the authority to instruct GLAS to enforce the RPA Claims,

as they have done here (Am. Compl. ¶ 23), but that does not render GLAS a "mere conduit" to

benefits flowing to the Noteholders. *Mfrs. & Traders Tr. Co. v. HSBC Bank USA, N.A.*, 564 F.

Supp. 2d 261 (S.D.N.Y. 2008) (hereinafter "*M&T*") is instructive for its discussion on this point.

*M&T* concerned claims related to securities issued by the Calpine Corporation, for which the

defendants served as "indenture trustees" and acted on behalf of the noteholders. *Id.* at 263. One

of the questions at issue in the case was whether, for purposes of diversity of citizenship, the

defendants' (*i.e.*, the indenture trustees') or the noteholders' citizenship governed. *Id.* The court

explained that the Note Trustee's citizenship governed because the Indenture Trustee retained the

power to sue on behalf of Note Holders. *Id.* at 264. Here, similarly, the Note Trustee retains the

power to sue on behalf of the Note Holders. (Am. Compl. ¶ 27.)

        None of the cases relied upon by Carter Bank has found that a trustee was not a

"real party in interest" under similar facts. For one, none of these cases was decided based on a

facial challenge to the sufficiency of the Complaint, meaning the court did not have to accept as

true the well-pled allegations concerning the trustee's role, as is the case here. *See Kerns*, 585

F.3d at 192 ("When a defendant makes a facial challenge to subject matter jurisdiction . . . the

facts alleged in the complaint are taken as true . . . ." (citing *Adams v. Bain*, 697 F.2d 1213, 1219

(4th Cir. 1982)). Carter Bank does not dispute that this is the governing standard here. (*See*

Mem. at 13 ("Where the defendant contends that a complaint fails to allege facts upon which

subject matter jurisdiction can be based, the facts alleged in the complaint 'are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" (quoting *Adams*, 697 F.2d at 1219) (alteration omitted)).

Further, of the cases Carter Bank relies upon, only *U.S. Bank, N.A. as Tr. for RMAC Tr. Series 2016-CTT v. Desrosiers* found that the trustee at issue in fact was not the "real party in interest". 2021 U.S. Dist. LEXIS 230131 (E.D.N.Y. Dec. 1, 2021). The others found that either the plaintiff failed to offer sufficient evidence on this point at the summary or default judgment stage, or the issue was not addressed by the trial court. *CityPlace Retail, LLC v. Wells Fargo Bank, N.A.*, 2021 U.S. App. LEXIS 21054, at *12 (11th Cir. July 15, 2021) (case remanded because subject matter jurisdiction was not litigated in the context of bench trial below; on remand the district court concluded that Wells Fargo as trustee was the real party in interest and the Eleventh Circuit concurred[3]); *U.S. Bank Tr., N.A. v. Dupre*, 2016 U.S. Dist. LEXIS 127848, at *11 (N.D.N.Y. Sept. 20, 2016) (at motion for default judgment, plaintiff failed to provide evidence specifically requested by the court); *Wilmington Sav. Fund Soc'y v. Okunola*, 2023 U.S. Dist. LEXIS 234905, at *10 (E.D.N.Y. Mar. 15, 2023) (at summary judgment, trustee provided no trust agreement or other document establishing its authority over trust). Further, in *Desrosiers*, the trustee was found not to be the "real party in interest" because it could act *only* at the instruction of the trust's beneficiaries. 2021 U.S. Dist. LEXIS 230131, at *11-*12. Here, while the instant case was pursuant to the Noteholders' instruction, the Amended Complaint alleges that the Note Trustee may also enforce the RPA Claims for the benefit of the Note Holders in its own discretion. (Am. Compl. ¶ 27.)

---

[3] *See CityPlace Retail, LLC v. CSMC 2007-C1 S. Rosemary, LLC*, 2023 U.S. App. LEXIS 8282, at *9 n.3 (11th Cir. Apr. 7, 2023).

Thus, the Amended Complaint sufficiently alleges that GLAS is a real party in interest.

B.   <u>Even if the Court Were To Look at the Citizenship of the Noteholders, the Court Would Still Have Diversity Jurisdiction</u>

Even if the citizenship of the Noteholders (as opposed to the Note Trustee) controls the Court's diversity analysis, the Amended Complaint adequately alleges that the Noteholders are citizens of foreign countries and thus diverse from Carter Bank, a Virginia citizen.  Thus, the Amended Complaint alleges facts sufficient to establish diversity of citizenship whether the Note Trustee's or Noteholders' citizenship is considered.

For foreign business entities, courts apply the citizenship test based on whether it is the foreign equivalent of a corporation (in which case citizenship is based on the principal place of business and place of incorporation) or not (in which case the citizenship is based on the citizenship of all members of the business entity).  *See Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 223-26 (4th Cir. 2019).  While determining whether a foreign entity is the equivalent of a corporation can be complex, if a foreign entity designates itself as a "corporation" it will generally be treated as such.  *Hawkins*, 935 F.3d at 233 (4th Cir. 2019) ("Courts have generally found that all entities denominated as 'corporations,' even entities like professional corporations that differ in important ways from traditional corporations, should be considered corporations for diversity purposes.").  Here, the Amended Complaint alleges that there are three Noteholders of the Hoffman Notes, for which GLAS acts as Note Trustee and is bringing these claims on their behalf:  (i) Credit Suisse Nova (Lux) ("CS Nova"), (ii) Credit Suisse Virtuoso SICAV-SIF ("CS Virtuoso") and (iii) Greensill Bank AG (in insolvency) ("Greensill Bank").  Each of these entities is the foreign equivalent of a corporation and is a citizen of a foreign country, as alleged in the Amended Complaint.

*First*, the Amended Complaint alleges facts sufficient to establish that both CS Nova and CS Virtuoso are citizens of the Grand Duchy of Luxembourg.  Both are organized under Luxembourg law as a *société d'investissement à capital variable*, sometimes shortened to "SICAV".  Courts have recognized that SICAVs can be organized such that they are "essentially corporations", when their "corporate powers are vested in a board of directors . . . much like corporate entities . . . in the United States".  *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009).  Here, the Amended Complaint is clear that both CS Nova and CS Virtuoso are organized as "the equivalent of a U.S. corporation" (Am. Compl. ¶¶ 42, 43), meaning their corporate powers are vested in a board of directors.  The Amended Complaint further alleges that they are incorporated under the laws of the Grand Duchy of Luxembourg and have their principal place of business in the city of Luxembourg (*id.*), thus making them citizens of Luxembourg.

*Second*, the Amended Complaint alleges facts sufficient to establish that Greensill Bank is a citizen of Germany, which Carter Bank does not dispute in its Motion to Dismiss.  Specifically, Greensill Bank is organized under the laws of Germany as an *Aktiengesellschaft*, or "stock corporation", making it the equivalent of a U.S. corporation.  (*Id.* ¶ 44.)  Greensill Bank is incorporated under the laws of Germany and has its principal place of business in Germany. (*Id.*)

Notwithstanding the foreign citizenship of the noteholders, the Motion to Dismiss argues that the Amended Complaint is deficient because it fails to allege the citizenship of other noteholders under a separate notes program—the "Wickham Notes"—that is referenced in the Standstill Agreement.  (Mem. at 19.)  The Amended Complaint makes no allegations concerning

the Wickham Notes because they are not at issue here.  GLAS is not a Note Trustee under the Wickham Notes and is not bringing any claim based on the Wickham Notes.

**II.    THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT GLAS IS AN "EXISTING CREDITOR" OF THE BLUESTONE ENTITIES**

Carter Bank next argues that GLAS was not a creditor of the Bluestone Entities at the time of the Challenged Transfers, and thus (1) the voluntary conveyance claim must be dismissed; and (2) the heightened fraud standard for "subsequent creditors" must be satisfied for the actual fraudulent conveyance claim.  (Mem. at 20-25.)  Because the well-pled allegations in the Amended Complaint establish that the Note Trustee was a creditor of the Bluestone Entities at the time of the Challenged Transfers, these arguments fail.

A.    The Note Trustee Was a Creditor of the Bluestone Entities When They Made the Challenged Transfers

As alleged in the Amended Complaint, the Challenged Transfers each took place after the RPA was executed on September 26, 2018, and before the end of 2018.  (Am. Compl. ¶ 68 (RPA executed September 26, 2018); *id.* ¶¶ 76, 80, 89 (Challenged Transfers took place between when the RPA was signed and end of the year in 2018).)  The Challenged Transfers were made using the funds that the Bluestone Entities borrowed under the RPA and paid to Carter Bank to pay off non-Bluestone debt.  (*Id.* ¶¶ 76, 80, 89.)  All of the RPA Claims have been assigned to the Note Trustee in accordance with agreements that were executed before the Challenged Transfers.  (*Id.* ¶¶ 121-30.)  These are the factual allegations in the Complaint. Carter Bank can try to dispute these factual allegations at summary judgment or trial, but not on a motion to dismiss.  *E.g.*, *Harvey*, 2017 WL 972161, at *1.

Not only does Carter Bank seek to debate the facts alleged in the Complaint, but also its debated points do not hold water.  The financing arrangement with the Bluestone Entities was effectuated through two sets of agreements: (i) the RPA, pursuant to which Greensill UK

loaned money to the Bluestone Entities; and (ii) the Hoffman Notes program documents (*i.e.*, the Hoffman Master Trust Deed and Hoffman MAA), which provided a mechanism to raise the RPA Funds in exchange for an assignment from Greensill UK of the repayment rights under the RPA (*i.e.*, the RPA Claims), which were assigned to the Note Trustee for the benefit of the Noteholders.  The thrust of Carter Bank's argument appears to be that the Hoffman Notes program documents were set up in 2017, before funds were advanced to Bluestone under the RPA.  That is right—the Hoffman Notes were intended to be how the money would be raised to loan the RPA Funds to the Bluestone Entities.  (Am. Compl. ¶¶ 23, 73.)  But that is also beside the point.  The relevant point is that the allegations of the Amended Complaint establish that the Note Trustee was an existing creditor of the Bluestone Entities at the time of the Challenged Transfers because the RPA Claims were assigned to the Note Trustee in accordance with Hoffman Notes program documents that were executed before the Challenged Transfers took place.  (*Id.* ¶¶ 121-30.)[4]

B.   The Allegations of the Amended Complaint State Actual and Voluntary Conveyance Claims Under the Standards for "Existing" Creditors

Because the Note Trustee was an existing creditor at the time of the Challenged Transfers, Carter Bank's argument that the voluntary conveyance claims must be dismissed is wrong based on the facts alleged in the Amended Complaint.  (*See* Mem. at 20-24.)  The rule

---

[4] GLAS was substituted for Citibank as Note Trustee in 2021, but this does not make it a "subsequent creditor" of the Bluestone Entities, a point that Carter Bank does not dispute in its Motion to Dismiss.  The voluntary fraudulent conveyance statute states that a claim cannot be made by "creditors whose debts have been contracted, or [] purchasers who have purchased, after [the challenged conveyance] was made".  Va. Code § 55.1-401.  The substitution of GLAS for Citibank in the role of Note Trustee does not alter the Note Trustee's status as a creditor of the Bluestone Entities at the time of the Challenged Transfers.

against subsequent creditors bringing voluntary conveyance claims simply does not apply, because GLAS is not a "subsequent" creditor.

For the same reasons, Carter Bank's argument that GLAS has failed to meet the alternative standard for allegations of fraud under Virginia's actual fraudulent conveyance statute that is applicable to "subsequent creditors" is also wrong based on the facts as alleged in the Amended Complaint.  (*See* Mem. at 24-25.)  Instead, GLAS need only satisfy the standard for existing creditors to plead fraudulent intent by pleading "badges of fraud".  *E.g.*, *White v. Llewellyn*, 857 S.E.2d 388, 390 (Va. 2021).[5]  Here, the Amended Complaint alleges several badges of fraud—namely, that the Bluestone Entities were insolvent at the time of the Challenged Transfers, the Bluestone Entities were being pursued by other creditors at the time of the Challenged Transfers, the Challenged Transfers were made for the benefit of the Bluestone Entities' owners and closely related parties and the Challenged Transfers were not supported by valuable consideration.  (*See* Am. Compl. ¶¶ 141-45 (summarizing badges of fraud).)  Carter Bank does not challenge the sufficiency of these allegations.

## III.   THE BLUESTONE ENTITIES ARE THE "TRANSFERORS" OF THE CHALLENGED TRANSFERS

Carter Bank next argues that the Amended Complaint fails to state a claim based on the mechanics of how the Challenged Transfers were effectuated—namely, that the first two

---

[5] The badges of fraud typically found by courts in Virginia include:  (a) the close relationship of the parties, (b) the transferor's insolvency at the time of the transfer, or that the transferor's property interests at the time of the transfer are well hidden and protected from creditors, (c) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer, (d) lack or gross inadequacy of consideration for the transfer, (e) retention or possession of the property by the transferor, or retention of an interest in the transferred property by the transferor, (f) fraudulent incurrence of indebtedness after the transfer, (g) unusual length of credit, (h) bonds taken at long periods and (i) no security taken for the purchase money.  *See White*, 857 S.E.2d at 391; *Hutcheson v. Savings Bank of Richmond*, 105 S.E. 677, 681 (Va. 1921); *C.F. Tr.*, 1999 WL 33456231, at *8.

Challenged Transfers were effectuated by Greensill UK transferring RPA funds, at the direction

of the Bluestone Entities, to Carter Bank, and the third Challenged Transfer included

intermediate transfers from the Bluestone Entities to other Justice Entities before the RPA Funds

were ultimately transferred to Carter Bank.  First, Carter Bank argues that these features of the

Challenged Transfers mean that the Bluestone Entities are not the "transferors" of the

Challenged Transfers for purposes of Virginia's fraudulent conveyance statutes.  (Mem. at

26-28.)  But the law is not so formalistic—fraudulent conveyance claims can be brought where

there is not a direct physical transfer from the debtor to the defendant creditor.

Virginia's fraudulent conveyance statute merely requires that monies that the

Bluestone Entities were entitled to (here, the RPA Funds) were directed to Carter Bank in a

manner that satisfies the other elements of the fraudulent conveyance statutes.  A direct transfer

is not such an element, as courts have recognized.  *See, e.g.*, *In re James River Coal Co*., 360

B.R. 139, 163 (Bankr. E.D. Va. 2007) ("[T]he Court may examine . . . the Challenged

Transaction's net effect. . . .  If the numerous steps taken to transfer the debtor's property can

reasonably be collapsed into a single, integrated plan that either defrauds creditors or leaves the

debtor with less than equivalent value, the transaction may be avoidable."); *see also Flame S.A.*

*v. Indus. Carriers,* 39 F. Supp. 3d 769, 789 (E.D. Va. 2014) (entering judgment on fraudulent

transfer claim against defendant corporation where, inter alia, defendant corporation's "offshoot"

company physically transferred loans to the transferee and transferee also received substantial

funds "from or through" defendant); *Phillips v. Moazzeni (In re Tarangelo)*, 378 B.R. 128, 137

(Bankr. E.D. Va. 2007) (entering judgment against defendant on fraudulent transfer claim where

transfer at issue involved payment by debtor into a brokerage account set up by defendant's

husband for defendant).

With respect to the first two Challenged Transfers, the Amended Complaint makes clear that the RPA Funds, which are what Greensill UK used to effectuate these Transfers, *were the property of the Bluestone Entities and that the Bluestone Entities controlled their use.* (Am. Compl. ¶ 72 (defining "RPA Funds" as the $780 million that Greensill UK advanced to the Bluestone Entities under the RPA); *id.* ¶ 74 ("The Bluestone Entities had control over how the RPA Funds would be used").)  The Bluestone Entities also instructed Greensill UK on how these funds should be used.  (*Id.* ¶¶ 76, 80.)  Thus, because the first two Challenged Transfers plainly involved the transfer of the debtor's property directly to Carter Bank, the Bluestone Entities are plainly considered the "transferors" for purposes of these transactions.  *E.g.*, *In re James River Coal Co.*, 360 B.R. at 163.  And the fact that, rather than the Bluestone Entities receiving the RPA Funds from Greensill UK and then sending it to Carter Bank, they directed Greensill UK to send the RPA Funds (which the Bluestone Entities were obligated to repay) to Carter Bank, does not mean this was not a direct transfer by the Bluestone Entities.  The Bluestone Entities constructively made the transfer, as it was *their* (borrowed) money that was sent by Greensill UK to Carter Bank.

With respect to the third Challenged Transfer, the Amended Complaint specifically alleges that this transfer was made as part of a "single, integrated plan to use RPA Funds to pay off loans for which the Bluestone Entities were not legally liable or otherwise obligated".  (Am. Compl. ¶ 89.)  Namely, the Amended Complaint alleges that $38.6 million of RPA Funds were transferred by Bluestone Resources to Tams Management and Justice Low Seam Mining, and that those entities had secured loans in place with Carter Bank.  (*Id.*)  The Amended Complaint further alleges that, when the $38.6 million transfer to these other Justice Entities is added together with the other known transfers to Carter Bank, the total amount

18

transferred almost perfectly matches up with the sum of RPA Funds that the Bluestone

Resources' documents show were transferred to Carter Bank (*id.*) and the amount by which

Carter Bank reduced its impaired loan balance as reported in its 2018 10-K (*id.* ¶ 93).  The

Amended Complaint also makes numerous allegations concerning the aggressive tactics that

Carter Bank used to pressure the Justices to use RPA Funds to pay down Justice Entities' debts,

including those on which the Bluestone Entities were not obligated.  (*Id.* ¶¶ 1, 15-16, 19, 79-80.)

Together, these allegations are more than satisfactory to establish the Bluestone Entities as the

"transferor" of these funds for purposes of the fraudulent conveyance statutes.

## IV.   CARTER BANK'S ESTOPPEL ARGUMENT IS PREMISED ON DISPUTED FACTS

Carter Bank's final argument is that Greensill UK's participation in the first two

Challenged Transfers estops GLAS from alleging either the actual or constructive fraudulent

conveyance claims.  The allegations in the Amended Complaint plainly do not support this

argument, which is why Carter Bank relies on factual assertions not contained within the

Amended Complaint to make this argument.  This is of course inappropriate at the motion to

dismiss stage, and thus this argument must be rejected.  *E.g.*, *Harvey*, 2017 WL 972161, at *1 (a

motion to dismiss "does not resolve contests surrounding the facts . . . .").

Carter Bank cites cases that have held that a party who is intimately familiar with,

and participates in, a fraudulent conveyance cannot pursue a claim to recover that conveyance.

(Mem. at 29.)  But, here, the only fact alleged in the Amended Complaint that Carter Bank can

cite in support of this argument is that Greensill UK provided the RPA Funds to Carter Bank at

the instruction of the Bluestone Entities—indeed, this allegation is the only portion of the

Amended Complaint that is cited in Carter Bank's argument on this point.  (*See* Mem. at 28

(citing Am. Compl. ¶¶ 65, 76, 79).)  That does not establish that Greensill UK knew that the

Challenged Transfers were fraudulent at the time they were made.  There are numerous facts alleged in the Amended Complaint as a basis for determining that the Challenged Transfers were fraudulent that are not undermined by Greensill UK providing the RPA Funds to Carter Bank at the Bluestone Entities' direction.  By way of some examples, the Amended Complaint alleges that the Bluestone Entities received zero, or grossly inadequate, consideration in exchange for the Challenged Transfers (*id.* ¶¶ 78-92), that the Bluestone Entities were not legally obligated (as guarantor or otherwise) on the non-Bluestone Carter Bank loans that were repaid (*id.* ¶¶ 16, 76-77, 80, 89), and that the Challenged Transfers were motivated by pressure exerted by Carter Bank on the Justice family (*id.* ¶¶ 1, 8-11, 15-16, 56-63, 74, 79-80, 93-94, 99).  The mere fact that Greensill UK knew that some of the RPA Funds were being transferred to Carter Bank falls far short of establishing that Greensill UK knew of the circumstances that made the transfers fraudulent.

Failing to find the support it needs for its argument in the Amended Complaint, Carter Bank nakedly asserts other facts, such as that Greensill UK "*knew* or *should have known* that the [Challenged T]ransfers were made for purpose of satisfying debts owed to Carter Bank by entities other than the Bluestone entities".  (Mem. at 28 (emphasis added).)  This remains insufficient, but, in any event, such assertions are not credited at this stage of the proceedings, where the well-pled allegations in the Amended Complaint must be accepted as true.  In discovery, these theories can be tested and their merit assessed, but, at this point, Carter Bank's say-so cannot be credited.

The cases cited by Carter Bank illustrate the point.  Three of the four cases cited by Carter Bank were made at the summary judgment stage, rather than the motion to dismiss stage, when evidence of the claimant's awareness of the details of the challenged transfers could

be assessed.  *See In re Abingdon Realty Corp.*, 21 B.R. 290, 292 (E.D. Va. 1982); *Persichelli v. Metropolitan Paper Recycling Inc.*, 926 N.Y.S.2d 346, 346 (N.Y. Sup. Ct. 2010); *Lavine v. Dorsey & Whitney*, 1997 Minn. App. LEXIS 243, *7-8 (Minn. App. 1997).

The only case cited by Carter Bank that was decided at the motion to dismiss stage—*In re Refco, Inc. Secs. Litig. v. CSFB*, 2009 U.S. Dist. LEXIS 129944, *44 (S.D.N.Y. Nov. 13, 2009)—is distinguishable.  Refco was a financial services company that was discovered to have accounting practices that had been fraudulent for years.  The company had engaged in a number of illegal activities, including the creation of shell companies to hide losses and the manipulation of financial statements that led to criminal convictions of several of its executives. *See Kirschner v. Grant Thornton LLP*, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009), *aff'd sub nom. Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010).  *Refco* concerned fraudulent transfer claims brought by the estate of Suffolk LLC, a thinly capitalized entity that was created for the specific purpose of purchasing worthless shares of another firm.  *In re Refco, Inc. Secs. Litig.*, 2009 U.S. Dist. LEXIS 129944, at *13.  The acquisition of these shares was funded by a $204 million loan to Suffolk made by Refco Capital LLC.  *Id.*  The issue that was decided in the passage cited by Carter Bank was whether the bankruptcy trustee for Suffolk had standing to bring fraudulent transfer claims, which required that Suffolk have "legitimate creditors".  *Id.* at *39-*52.  The Court found that Refco was not a legitimate creditor of Suffolk because, *based on five specific factual allegations in the Complaint itself*, it was easily inferred that Refco was "intimately involved with and voluntarily participated in" the challenged transactions.  *Id.* at *43-*45.  There are no such factual allegations in the Amended Complaint here.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Carter Bank's Motion to Dismiss in its entirety.  Alternatively, dismissal of any portion of the Amended Complaint should be without prejudice for Plaintiff to further amend the complaint.

Dated:  June 4, 2024

Respectfully submitted,

/s/ Gibson S. Wright

**McCANDLISH HOLTON, PC**
D. Cameron Beck, Jr. (VSB No. 39195)
Gibson S. Wright (VSB No. 84632)
1111 East Main Street, Suite 2100
Richmond, VA 23219
Telephone:  (804) 344-6322
Facsimile:  (804) 775-3800
cbeck@lawmh.com
gwright@lawmh.com

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (*pro hac vice*)
George E. Zobitz (*pro hac vice*)
Omid H. Nasab (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
pzumbro@cravath.com
jzobitz@cravath.com
onasab@cravath.com

*Counsel for Plaintiff GLAS Trust Company LLC, in its capacity as Note Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2024, I electronically filed the foregoing

Opposition to Defendant Carter Bank & Trust's Motion to Dismiss with the Clerk of Court using

the CM/ECF system, which will send a notification of filing to all counsel of record.

*/s/ Gibson S. Wright*
**McCANDLISH HOLTON, PC**
Gibson S. Wright (VSB No. 84632)
1111 East Main Street, Suite 2100
Richmond, VA 23219
Telephone:  (804) 344-6322
Facsimile:  (804) 775-3800
gwright@lawmh.com

*Counsel for Plaintiff GLAS Trust Company LLC, in
its capacity as Note Trustee*