# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Danville Division

<table>
<tr><td>

GLAS TRUST COMPANY LLC, *in its capacity as Note Trustee*,

      Plaintiff,


      v.


CARTER BANK & TRUST,

      Defendant.

</td><td>

Civil Action No. 4:24-cv-00005

</td></tr>
</table>

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS <u>PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6)</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    ARGUMENT ......................................................................................... 5

     A.     The Amended Complaint Fails to Plead Diversity Sufficiently ........................... 5

          1.     The Amended Complaint Fails to Plead Facts Sufficient to Establish that GLAS is the Real Party in Interest ...................................... 5

          2.     The Amended Complaint Fails to Plead the Citizenship of the CS Funds or Their Sub-Funds ......................................................... 9

     B.     The Amended Complaint Fails to Allege that GLAS Was a Creditor of the Bluestone Entities at the Time of the Transfers ................................... 11

          1.     The Amended Complaint does not plead facts establishing that GLAS was a creditor of the Bluestone Entities before the transfers occurred ......................................................................... 11

          2.     Because GLAS is a subsequent creditor, the Amended Complaint fails to allege that the Bluestone Entities intended to defraud the Noteholders ...................................................................... 13

     C.     GLAS Fails to Plead Facts Demonstrating a Transfer from "the Debtors," the Bluestone Entities, With Respect to any of the Transfers ............................ 14

     D.     Given Greensill UK's Participation in the First Two Transfers, GLAS Cannot Plead Any Intent to Defraud Greensill UK ...................................... 16

III.    CONCLUSION .................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Americold Realty Trust v. Conagra Foods*,
  577 U.S. 378 (2016)............................................................................................................5

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)............................................................................................................5

*C.F. Trust v. Peterson*,
  No. 97-2003-A, 1999 U.S. Dist. LEXIS 22623 (E.D. Va. Jan. 8, 1999) ................................13

*Cohen v. De La Cruz*,
  523 U.S. 213 (1998)..........................................................................................................12

*Cortlandt St. Recovery Corp. v. Aliberti*,
  12-CV-8686 (JPO), 2014 U.S. Dist. LEXIS 170277 (S.D. N.Y. Dec. 9, 2014)...................6, 9

*Flame, S.A. v. Indus. Carriers*,
  39 F. Supp.3d 769 (E.D. Va. 2014) .....................................................................................15

*Frohnapfel v. Arecelormittal Weirton LLC*,
  Civil Action No. 5:14-cv-45, 2014 U.S. Dist. LEXIS 193304 (N.D. W.Va.
  June 2, 2014)....................................................................................................................10

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ..........................................................................................7, 12

*Gonzalez v. Thaler*,
  565 U.S. 134 (2012)............................................................................................................5

*Gray v. McCormick*,
  181 Va. 52, 23 S.E.2d 803 (1943)......................................................................................13

*Grayson v. Westwood Bldgs., L.P.*,
  300 Va. 25, 859 S.E.2d 651 (2021)................................................................................13, 14

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011)............................................................................................................5

*Indus. Fuel Co. v. Invista S.A.R.L.*,
  Case No. 5:06cv40-V, 2008 U.S. Dist. LEXIS 19671....................................................10, 11

*In re James River Coal Co.*,
  360 B.R. 139 (Bankr. E.D. Va. 2007)..................................................................................15

*Justice v. Wells Fargo Bank, Nat'l Ass'n,*
674 Fed. Appx. 330 (5th Cir. 2016)......................................................................5, 9

*Manu v. GEICO Cas. Co.,*
293 Va. 371, 798 S.E.2d 598 (2017).........................................................................12

*Martzell v. Deutsche Bank Nat'l Trust Co.,*
SA-5:22-CV-00018-XR, 2022 U.S. Dist. LEXIS 59433 (W.D. Tex. March 30,
2022) ......................................................................................................................6, 9

*Mfrs. Traders Trust Co. v. HSBC Bank U.S.A., N.A.,*
564 F. Supp. 2d 261 (S.D. N.Y. 2008)......................................................................8, 9

*Navarro Sav. Ass'n v. Lee,*
446 U.S. 458 (1980)..............................................................................................5, 6, 9

*Phillips v. Moazzani (In re Tarangelo),*
378 B.R. 128 (Bankr. E.D. Va. 2007) ......................................................................15

*In re Refco, Inc. Secs. Litig. v. CFPB,*
2009 U.S. Dist. LEXIS 129944 (S.D. N.Y. Nov. 13, 2009) ....................................17

*U.S. Bank, N.A. as Tr. For RMAC Tr. Series 2016-CTT v. Desrosiers,*
17-CV-7338 (JMW), 2021 U.S. Dist. LEXIS 230131 (E.D. N.Y. Dec. 1,
2021) ......................................................................................................................5, 8

*U.S. Bank Tr., N.A. v. Dupre,*
15-CV-0558, 2016 U.S. Dist. LEXIS 127848 (N.D. N.Y. Sept. 20, 2016) .............5

*In re Vivendi Universal, S.A.,*
605 F. Supp. 2d 570 (S.D. N.Y. 2009)......................................................................10

*Wilmington Sav. Fund Soc'y v. Okunola,*
18-CV-2084 (AMD) (PK), 2023 U.S. Dist. LEXIS 234905 (E.D. N.Y. March
15, 2023) ..................................................................................................................9

## Statutes

11 U.S.C. § 548(a)(1)(A) .............................................................................................15

Va. Code §§ 55-80 and -81 ..........................................................................................15

Virginia Code § 55.1-400 .......................................................................................13, 14

Virginia Code § 55.1-401 .......................................................................................11, 13

## Other Authorities

Fed. R. Civ. P. 11(b)(3)................................................................................................16

Fed. R. Civ. P. 12(b)(1)..............................................................................................1, 11

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

Defendant Carter Bank & Trust ("Carter Bank"), by counsel, submits this Reply Memorandum in Support of its Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure the Amended Complaint (the "Amended Complaint" or "Am. Compl.") filed by GLAS Trust Company, LLC, in its capacity as Note Trustee ("Plaintiff" or "GLAS").

## I.  INTRODUCTION[1]

Carter Bank moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) because GLAS failed to plead diversity jurisdiction, and pursuant to Rule 12(b)(6) because GLAS failed to plead facts demonstrating 1) that GLAS was a creditor of the Bluestone Entities at the time of the challenged transfers, 2) that the Bluestone Entities made the challenged transfers to Carter Bank, and 3) because Greensill Capital (UK) Limited ("Greensill UK"), GLAS's predecessor in interest, was intimately involved with and participated in two of the three challenged transfers.

GLAS's Memorandum in Opposition to Carter Bank's Motion to Dismiss, ECF No. 44 ("Opposition" or "Mem. Op."), is marked by a glaring deficiency: GLAS simply disregards documents to which it refers in the Amended Complaint and on which its claims are based, pretending that their contents are irrelevant to Carter Bank's Motion. This is surprising in that Carter Bank's Memorandum in Support of its Motion to Dismiss the Amended Complaint (ECF No. 21) ("Opening Memorandum") not only relied on (and attached) the few documents referenced in the Amended Complaint that Carter Bank had in its possession, but also challenged GLAS to produce and explain the many other documents relied upon in the Amended Complaint. Instead, GLAS attempts to avoid dismissal by relying on artfully disingenuous allegations, hoping to plead

---

[1] Except as specifically identified herein, defined terms have the same meaning ascribed to them in Carter Bank's Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6).

around the fatal deficiencies in its legal theories.  But the Amended Complaint relies on and incorporates the RPA and the Standstill Agreement.  The contents of those documents must therefore be accepted as true and considered as part of the allegations in the Amended Complaint for purposes of Carter Bank's Motion to Dismiss.  Considering these documents, together with the allegations of the Amended Complaint, GLAS's claims should be dismissed for the following reasons:

*First*, GLAS has failed to establish the diversity of citizenship necessary to support the Court's exercise of subject matter jurisdiction.[2]  While GLAS contends that it need allege only it has "discretion" to bring these claims to demonstrate that it is the real party in interest, the cases GLAS cites do not stand for that proposition (a theme consistent throughout its Opposition).  Instead, they require consideration of a wide array of factors bearing on the threshold question whether GLAS has real and substantial control over the assets of the trust. Yet the Amended Complaint cites no other power GLAS possesses, nor does it attach the documents that would reflect those powers – if they exist.  Moreover, the provisions of the Standstill Agreement that GLAS specifically cites as an alternative basis for its standing contradict GLAS's allegation that it has discretion to bring these claims without Noteholder direction.

Recognizing the relevance of the Noteholders' citizenship, GLAS asserts that *some* of the Noteholders are Luxembourg entities that should be considered akin to a U.S. corporation for diversity of citizenship. What GLAS omits, however, is that the *one* case it cites for this legal

---

[2] Carter Bank's challenge to jurisdiction is both facial and factual.  Not only has GLAS failed to plausibly allege that the Court has diversity jurisdiction over this case, but, as Carter Bank has argued, the documents referenced in the Amended Complaint – which GLAS has refused to put in front of the Court – support the conclusion that GLAS is not the real party in interest and the Noteholders, which appear to be comprised of many different entities, may not be diverse.  Limited jurisdictional discovery is necessary to address this factual challenge, which is why Carter Bank has sought leave for such discovery.

conclusion recognized that such Luxembourg entities are also akin to limited partnerships. Thus, under the case law cited in Carter Bank's Opening Memorandum, (ECF No. 36, at 18-19), the Court must analyze the citizenship of these entities under both the test for corporations and the test for limited partnerships. The Amended Complaint fails to allege facts from which such a determination can be made. Accordingly, it should be dismissed for failure to establish that the parties are diverse, as is GLAS's burden.

*Second*, the Amended Complaint does not allege facts demonstrating that GLAS was a creditor of the Bluestone Entities at the time of the challenged transfers. In its Opposition, GLAS does nothing more than rehash the deliberately opaque allegations that GLAS obtained some undefined rights through a byzantine series of transactions that took place in 2017, well before the RPA was executed. Again, however, the RPA itself – which is part and parcel of the Amended Complaint – makes clear that any assignment of rights under the RPA had to occur *after* it was executed in late 2018, *i.e.*, after Bluestone Coal became obligated thereunder. Indeed, the Amended Complaint admits as much in paragraph 24:

> The ***enforcement right in respect of the RPA Claims arose when***, after the Bluestone Entities informed Greensill UK ***in March 2021*** that they were no longer going to perform under the receivables program, Greensill UK went into bankruptcy, and the Noteholders stopped receiving payments due on the Hoffman Notes.

Am. Compl. ¶ 24 (emphasis added). GLAS also alleges, in the alternative, that it acquired its rights by virtue of the 2022 Standstill Agreement. Either way, GLAS acquired its rights in the RPA claims ***long after*** the transfers in question, making it a "subsequent creditor" barred from asserting a claim under Virginia's voluntary conveyance statute and incapable of alleging that the Bluestone Entities intended to defraud GLAS or the Noteholders.

3

*Third*, the Amended Complaint alleges that the first two challenged transfers were made by Greensill UK, *not* the "debtor," the Bluestone Entities. While GLAS asserts that an indirect or constructive transfer qualifies under Virginia's fraudulent and voluntary conveyance statutes, neither the statutes nor any Virginia case law supports this assertion. Once again, the cases mis-cited by GLAS are inapposite and/or do not support the contention for which GLAS cites them.

*Fourth*, the allegations of the Amended Complaint, and the only plausible inference to be drawn therefrom, support the conclusion that Greensill UK *itself* not only made the first two transfers to Carter Bank, but that Greensill UK participated in the transactions to such a degree that it is estopped from challenging those transfers. GLAS tries to pretend that its predecessor-in-interest, Greensill UK, innocently transferred funds to Carter Bank at the behest of the Bluestone Entities, completely uninterested in and unaware of how its $247 million was being used or would be repaid. But the facts alleged in the Amended Complaint show that the transfers were part of Greensill UK's commercial transactions with the Bluestone Entities, evidenced by the RPA, and Greensill UK knew that it was transferring funds far in excess of Bluestone debts directly to Carter Bank. The only inference that can be drawn from these alleged facts is that Greensill UK knew that the funds were being used to pay non-Bluestone debts to Carter Bank. In short, GLAS is estopped from now arguing that these transfers – in which Greensill UK participated – are fraudulent or voluntary conveyances.

The Amended Complaint should be dismissed in its entirety both for failure to plead diversity and because it fails to state a claim under Virginia's fraudulent conveyance and voluntary conveyance statutes.

## II.   ARGUMENT

### A.  The Amended Complaint Fails to Plead Diversity Sufficiently

GLAS does not dispute that the Court must ensure that GLAS is the "real part[y] to [the] controversy for purposes of [the Court's] diversity jurisdiction." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980); *U.S. Bank, N.A. as Tr. For RMAC Tr. Series 2016-CTT v. Desrosiers*, 17-CV-7338 (JMW), 2021 U.S. Dist. LEXIS 230131, at *7 (E.D. N.Y. Dec. 1, 2021). GLAS also admits that this is not a "traditional trust" arrangement. Mem. Opp. at 9. This means that GLAS cannot simply rely on its own citizenship to demonstrate diversity unless it demonstrates that it is the real party in interest. *Americold Realty Trust v. Conagra Foods*, 577 U.S. 378, 383 (2016).[3]

### 1.  The Amended Complaint Fails to Plead Facts Sufficient to Establish that GLAS is the Real Party in Interest

GLAS concedes that a trustee is a real party in interest to the controversy only when it is an active trustee whose control over the assets held in its name is real and substantial – *i.e.*, it has the customary powers to hold, manage, and dispose of assets for the benefit of others. *Navarro*, 466 U.S., at 464; *Justice v. Wells Fargo Bank, Nat'l Ass'n*, 674 Fed. Appx. 330, 332 (5th Cir. 2016) (where a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an active trustee whose control over the assets held in its name is real and substantial); *U.S. Bank Tr., N.A. v. Dupre*, 15-CV-0558 (LEK/TWD), 2016 U.S. Dist.

---

[3] While GLAS attempts to cabin Carter Bank's motion to a facial, rather than factual, challenge to jurisdiction, Carter Bank has challenged both the adequacy of GLAS's allegations and the sufficiency of the documents – many of which remain unproduced by GLAS – supporting those allegations.  In any event, "courts … have an ***independent obligation*** to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (emphasis added).  Thus, "a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety" (*Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)), because the failure to identify early in a case that the trial court lacks subject matter jurisdiction could result in "many months of work on the part of the attorneys and the court … wasted." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

LEXIS 127848 (N.D. N.Y. Sept. 20, 2016). By contrast, "'naked trustees' who act as 'mere conduits' for a remedy flowing to others" are not the real party to the controversy. *Navarro*, 446 U.S. at 465.

Positing that the "trust assets" are the "RPA Claims," GLAS impermissibly seeks to narrow the scope of the inquiry to whether GLAS has the discretion to bring suit on behalf of the Noteholders. Mem. Opp., at 9. Based on this faulty assertion, GLAS claims that the Amended Complaint sufficiently alleges that GLAS has the "power to hold, manage, and dispose of assets for the benefit of others" because it makes the single allegation that GLAS has the power to bring claims both when instructed by the Noteholders and in its own discretion for the benefit of the Noteholders. *Id.* (citing Am. Compl. ¶ 27.)  But the inquiry that must be undertaken – supported by the very case law GLAS cites – is far more wide-ranging, identifying the relevant "powers" as including holding legal title to the trust assets, possessing the right to invest those assets, the right to dispose of the notes on behalf of the beneficiaries, the authority to manage the notes, as well as the authority to use available remedies to collect payment in the name of the Noteholders. *Cortlandt St. Recovery Corp. v. Aliberti*, 12-CV-8686 (JPO), 2014 U.S. Dist. LEXIS 170277, at *6 (S.D. N.Y. Dec. 9, 2014) (trustee was an active trustee when the indenture agreement demonstrated that it had authority to manage the notes, collect payment, dispose of the notes, and sue on behalf of the Noteholders); *Martzell v. Deutsche Bank Nat'l Trust Co.*, SA-5:22-CV-00018-XR, 2022 U.S. Dist. LEXIS 59433, at *8-9 (W.D. Tex. March 30, 2022) (Deutsche Bank had legal title to the assets, the authority to manage and dispose of the trust assets, as well as enforce collection). Thus, the ***sole*** allegation that GLAS had the "discretion" to bring suit on behalf of the

Noteholders is insufficient to demonstrate that it had the "power to hold, manage, and dispose of the [Notes or other] assets for the benefit of others."[4]

Matters are only made worse for GLAS by the fact that the Standstill Agreement, which is specifically incorporated into the Amended Complaint and used as an alternative basis for GLAS's claim of standing, contradicts GLAS's assertion that it has discretion to act on its own. As Carter Bank pointed out in its Opening Memorandum – and GLAS nowhere disputes – the Standstill Agreement indicates that the claims against Carter Bank are held exclusively by the Noteholders. *See, e.g.*, ECF No. 36, Ex. 1, Annex I, p. 48 (definition of "Carter Bank Litigation" and "Claims"), and any releases of such claims are "By the Noteholders"), § 12.1; §§ 14.1, 14.2 (Noteholders' instructions were necessary to commence this litigation); § 16.1(a) (the Note Trustees entered into the Agreement only in accordance with instructions and directions given by the Noteholders)).[5] The Court must credit the contents of the Standstill Agreement as true on a motion to dismiss and accept its contents over the allegations in the Amended Complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016) (when the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper).[6] Furthermore, the Standstill Agreement demonstrates that the Noteholders

---

[4] Without the Hoffman Master Trust Deed, neither Carter Bank nor the Court can determine the "powers" and "rights" GLAS possesses – or does not possess. Although GLAS repeatedly references that critical document in the Amended Complaint and Carter Bank's Motion challenged GLAS to produce it, GLAS resolutely refuses to do so. One can only assume that GLAS's reluctance stems from the fact that the Hoffman Master Trust Deed confirms that the Noteholders, not GLAS, are the real parties in interest.

[5] All citations to exhibits herein are to the exhibits field with Carter Bank's Opening Memorandum, ECF No. 36.

[6] GLAS cites and relies on the Standstill Agreement as the source of its standing as a creditor of Bluestone. Am. Compl. ¶ 134-135. Indeed, given GLAS's inability to plead an assignment of any

are the parties that wield control over the trust assets and that GLAS must act at their direction.[7] This type of authority – *i.e.*, the authority to direct the trustee to take actions, including to bring this case, is "exactly the type of authority that makes the beneficiary – rather than the [trustee] – the real party of interest." *Desrosiers*, 2021 U.S. Dist. LEXIS 230131, at *13 (where trust beneficiary was empowered to direct the trustee in connection with the execution of documents and the enforcement of the rights and protection of the interests of the beneficiary, the trust agreement gave the beneficiary legitimate control over the trust assets).

Although studiously avoiding any reference to the Standstill Agreement in its Opposition, GLAS tries to circumvent the import of Standstill Agreement's plain language by arguing that GLAS is not a "mere conduit" of the Noteholders. Mem. Opp., at 10. But again, the case law GLAS mis-cites for this proposition puts the lie to that argument. For instance, GLAS argues that *Mfrs. Traders Trust Co. v. HSBC Bank U.S.A., N.A.*, 564 F. Supp. 2d 261 (S.D. N.Y. 2008), supports that its power to sue on behalf of the Noteholders is sufficient to demonstrate that it is the real party in interest.  Mem. Opp., at 10.  But in *Mfrs. Traders Trust Co.*, the noteholders could sue on their own behalf only after five requirements were met, one of which included the refusal of the indenture trustee to sue.  *Id.*, at 264.  Moreover, the plaintiff had sued the indenture trustees directly, rather than the noteholders, thus showing recognition that the trustee was the real party in

_____

rights under the RPA, the Standstill Agreement appears to be the ***only*** grounds on which it can purport to base any fraudulent conveyance claim.

[7] Indeed, the Standstill Agreement provides that "the rights, duties, discretions and liabilities of the Note Trustees … in respect of this Agreement are *subject to* the detailed provisions, *exclusions and limitations* set out in the Hoffman Master Trust Deed (in the case of GLAS as Note Trustee)." Ex. 1, § 16.1(d) (emphasis added). Likewise, the Tolling Agreement (Ex. 4), again relied upon in the Amended Complaint (purporting to toll the statute of limitations on the claims being asserted against Carter Bank), ***never mentions the Note Trustee*** as the party with the right to bring the claims.

interest and precluding any argument to the contrary.  *Id.*  The remaining cases cited by GLAS likewise involved extremely limited rights held by the noteholders. *Martzall*, 2022 U.S. Dist. LEXIS 59433, at *10-11 (noteholders had no right to vote or otherwise control the operation and management of the trust); *Cortlandt St. Recovery Corp.*, 2014 U.S. Dist. LEXIS 170277, at *8 (noteholders had right to direct trustee to pursue only certain remedies and only in some situations); *Justice*, 674 Fed. Appx. at 333 (trust beneficiaries had no power to control the operation and management of the trust fund).

The Amended Complaint alleges no facts demonstrating that the Noteholders' rights, particularly those relating to filing suit, are limited in any way.[8] Thus, contrary to GLAS's assertions, the Amended Complaint does not adequately plead that GLAS "wield[s] sufficient control over the assets of the trust to be considered the real party in interest." *Wilmington Sav. Fund Soc'y v. Okunola*, 18-CV-2084 (AMD) (PK), 2023 U.S. Dist. LEXIS 234905, at *7 (E.D. N.Y. March 15, 2023). Instead, the only conclusion that can be drawn from the allegations in the Amended Complaint, which necessarily include the contents of the Standstill Agreement, is that GLAS is a "'naked trustee[]' who act[s] as 'mere conduit[]' for a remedy flowing to others [here the Noteholders]." *Navarro*, 446 U.S. at 465.

> 2. The Amended Complaint Fails to Plead the Citizenship of the CS Funds or Their Sub-Funds

Recognizing that the citizenship of the Noteholders is relevant to the jurisdictional inquiry, GLAS argues that it has adequately alleged that the Noteholders are citizens of either Luxembourg or Germany. Mem. Opp., at 12-13.  Specifically, GLAS alleges that both Credit Suisse Nova (Lux)

---

[8]  At least one Noteholder, Credit Suisse Virtuoso SICAV-SIF, has proven it can take legal action on its own by filing legal pleadings in the U.S. District Court for the Northern District of California. *See In re Ex Parte Application of Credit Suisse Virtuoso SICAV-SIF in Respect of Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund*, Case No. 3:21-mc-80308-JCS (N.D. Cal. 2022).

and Credit Suisse Virtuoso SICAV-SIF (collectively, "CS Funds") are *sociétés d'investissement à capital variable*, sometimes referred to as "SICAVs," and that they are akin to U.S. corporations for diversity jurisdiction analysis.  *Id.*, at 13; *see also* Am. Compl. ¶ 42. Not only is this allegation a legal conclusion that the Court need not credit, but it also (in what has become a pattern) misstates the law.  In this instance, GLAS cites *In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 579 (S.D. N.Y. 2009), for the proposition that SICAVs "can be organized such that they are 'essentially corporations.'"  Mem. Opp., at 13.  What GLAS conveniently leaves out, however, is that (1) the court was addressing the standing of certain trustees to bring claims on behalf of certain SICAV entities, not how SICAVs should be assessed from a personal jurisdiction perspective; and (2) the court found SICAVs to be akin to both corporations and limited partnerships. *In re Vivendi*, 605 F. Supp.2d at 579 ("SICAVs are essentially corporations *or limited partnerships* governed by corporate law." (emphasis added)).[9]

Given that the CS Funds are foreign entities akin to both U.S. corporations and limited partnerships, the Court must consider the citizenship of these entities under both tests. *See Frohnapfel v. Arecelormittal Weirton LLC*, Civil Action No. 5:14-cv-45, 2014 U.S. Dist. LEXIS 193304, at *4-5 (N.D. W.Va. June 2, 2014) (where no authority specifically discussed whether an AB – a Swedish organizational form – should be treated as a corporation or an LLC, a court must assess citizenship under both tests); *Indus. Fuel Co. v. Invista S.A.R.L.*, Case No. 5:06cv40-V, 2008 U.S. Dist. LEXIS 19671, as *8 (W.D. N.C. Feb. 5, 2008 (assessing citizenship of S.A.R.L. under both tests).  When the CS Funds are treated as limited partnerships, the Court needs to

---

[9] Rather than addressing the problems with *In re Vivendi*, GLAS uses ellipses to omit the language it does not like (shown underlined): "<u>SICAVs are</u> essentially corporations <u>or limited partnerships that are governed by corporate law. [Record citation omitted] They have their own legal personality, and</u> corporate powers are vested in a board of directors <u>(or general partner)</u> much like corporate entities <u>(or partnerships)</u> in the United States."  *In re Vivendi*, 605 F. Supp.2d at 579.

consider the citizenship of their limited partners, members, and/or investors for diversity purposes. *Id.* The Amended Complaint provides no facts that would enable the Court to assess that citizenship. Moreover, the Amended Complaint, which alleges the existence of certain "sub-funds," wholly fails to address the citizenship of the sub-funds. The nature of these parties, and the identity of any limited partners, members, and/or investors they may have remains a mystery – one that is not solved by GLAS's Opposition, which peculiarly avoids addressing the issue at all.

In short, GLAS has the burden to establish this Court's diversity jurisdiction. Nothing in GLAS's Opposition demonstrates that it has met this burden.  The Amended Complaint therefore should be dismissed under Rule 12(b)(1).[10]

## B. The Amended Complaint Fails to Allege that GLAS Was a Creditor of the Bluestone Entities at the Time of the Transfers

### 1. The Amended Complaint does not plead facts establishing that GLAS was a creditor of the Bluestone Entities before the transfers occurred

GLAS recognizes that, under Virginia Code § 55.1-401, it must have been a "creditor" at the time the allegedly fraudulent transfers were made to Carter Bank to recover those funds. Mem. Opp., at 14.  As Carter Bank noted in its Opening Memorandum, the Amended Complaint alleges only a series of assignments that took place in 2017 – predating execution of the RPA by almost a year.  Thus, at the time the Note Trustee purportedly acquired "rights" under the 2017 "series of agreements," the Bluestone Entities had no obligation whatsoever to Greensill UK, let alone derivatively to the Noteholders or Note Trustee. The "rights" assigned in 2017 therefore could not

---

[10] Should the Court determine that GLAS's allegations clear the pleading bar and survive a facial challenge, Carter Bank seeks limited jurisdictional discovery pursuant to its motion in the alternative for jurisdictional discovery – a motion rendered necessary only because GLAS has refused at every turn to provide copies of the documents it cites and relies on repeatedly in the Amended Complaint.

have included the right to payment under the RPA – a document that did not exist at the time. Indeed, the Amended Complaint admits as much in paragraph 24:

> The **enforcement right in respect of the RPA Claims arose when**, after the Bluestone Entities informed Greensill UK **in March 2021** that they were no longer going to perform under the receivables program, Greensill UK went into bankruptcy, and the Noteholders stopped receiving payments due on the Hoffman Notes.

Am. Compl. ¶ 24 (emphasis added).

Unable or unwilling to address the RPA, GLAS's only rebuttal is to reiterate the allegations in the Amended Complaint, contending that the alleged assignment of rights somehow occurred before the challenged transfers, and asserting that this is a summary judgment issue.  Mem. Opp., at 14.  But GLAS cannot evade the plain language of the RPA, which is incorporated into the Amended Complaint and whose contents must be taken as true for purposes of this motion to dismiss. *Goines*, 822 F.3d at 166. The language of the RPA reveals the fatal gap in the purported assignment of Greensill UK's claims under the RPA to the Note Trustee.  As Carter Bank explained in its Opening Memorandum – and GLAS does not rebut in its Opposition – Section 10(a) of the RPA makes clear that assignment of any right to payment under the RPA could take place only **after** the RPA was executed (thereby binding Bluestone Coal to its terms) and funds were advanced to Bluestone Coal or Blackstone. Only then could the Bluestone Entities have any "payment obligation" to Greensill UK that they could further assign to GLAS or its predecessor. *See, e.g., Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998) (A "right to payment" is "nothing more nor less than an enforceable obligation"); *Manu v. GEICO Cas. Co.*, 293 Va. 371, 387, 798 S.E.2d 598, 607 (2017) (insured does not have "an existing right" to payment under contract until he meets certain conditions).   Section 10(a) (like the rest of the RPA) contemplates **future** assignments. Section 10(a) provides that Greensill UK "**shall have** the right without consent of or

notice to [Bluestone Coal] to sell, transfer, negotiate, or grant participations in all or any part of, any interest in, any Purchased Receivable, or in [Greensill UK's] obligations, rights, interest and benefits hereunder…." Ex. 2, RPA § 10(a) (emphasis added). Likewise, § 10(a) lists the "Initial Identified Assignees" as parties to whom Greensill UK's rights, title, and interest under the RPA, "***may be assigned or participated*** … pursuant to one or more purchase, participation or similar transfer agreements." *Id.* (emphasis added)).

In short, the Amended Complaint alleges only an assignment of some undefined rights in 2017, but also acknowledges that any assignment of rights to payment under the RPA could occur only ***after*** the RPA was executed in September 2018. Because no such assignment is alleged until 2022, well after the challenged transfers, GLAS is a "subsequent creditor" and cannot recover under Virginia Code § 55.1-401. *C.F. Trust v. Peterson*, No. 97-2003-A, 1999 U.S. Dist. LEXIS 22623, at *32 (E.D. Va. Jan. 8, 1999) (the Virginia legislature did not intend assignees to have the right to bring claims for voluntary conveyance).

> 2.   Because GLAS is a subsequent creditor, the Amended Complaint fails to allege that the Bluestone Entities intended to defraud the Noteholders

GLAS does not dispute the basic legal proposition that a subsequent creditor must show actual fraudulent intent and that a "prospective fraud was contemplated and directed against" that subsequent creditor to recover under Virginia Code § 55.1-400. *Grayson v. Westwood Bldgs., L.P.*, 300 Va. 25, 52, 859 S.E.2d 651, 667 (2021) (citing *Gray v. McCormick*, 181 Va. 52, 60, 23 S.E.2d 803, 807 (1943)). Instead, GLAS's entire argument is based on its contention that it is not a subsequent creditor. Mem. Opp., at 16. As set forth above, however, GLAS is wrong.  Because the Amended Complaint nowhere alleges that the Bluestone Entities – who did not even know of the Noteholders' existence at the time of the transfers – intended to defraud the Noteholders or

Note Trustee, GLAS cannot assert a claim under Virginia Code § 55.1-400. Count One of the Amended Complaint therefore must be dismissed.

### C. GLAS Fails to Plead Facts Demonstrating a Transfer from "the Debtors," the Bluestone Entities, With Respect to any of the Transfers

GLAS does not dispute that Virginia's fraudulent and voluntary conveyances statutes are based upon England's Statute of 13 Elizabeth and are different from the more modern and creditor-friendly uniform laws governing fraudulent and voluntary conveyances in other states. A plain reading of §§ 55.1-400 and 401 and Virginia case law interpreting those statutes demonstrates that a fraudulent or voluntary transfer must be made *by the debtor* – in this case, at least one of the Bluestone Entities – not by a third party, and certainly not by the party complaining of the transfers (here GLAS as successor in interest to Greensill UK). GLAS has admitted, however, that the first two challenged transactions were made not by the debtor, but by its predecessor in interest, Greensill UK itself, directly to Carter Bank. And the third challenged transaction was made by Tams Management and Justice Low Seam Mining, and not by one of the Bluestone Entities. Am. Compl. ¶ 89. This precludes GLAS from recovering under §§ 55.1-400 and 401.

Hoping to avoid dismissal of these claims, GLAS argues that the Virginia fraudulent conveyance statute "merely requires that monies that the Bluestone Entities were entitled to (here the RPA Funds) were directed to Carter Bank in a manner that satisfies the other elements of the fraudulent conveyance statutes." Mem. Opp., at 17. According to GLAS, a "direct transfer is not such an element." *Id.* As an initial matter, GLAS's argument is directly contradicted by the recent Supreme Court of Virginia case, *Grayson*, where Justice Kelsey observed that "[t]hese statues [§§ 55.1-400 and 401] generally presuppose a conveyance *by the debtor* from the debtor's estate." 300 Va. at 49, 859 S.E.2d at 665 (emphasis added). Tellingly, GLAS simply ignores this case. Instead, GLAS mis-cites a hodge-podge of inapposite cases that, again, fail to support the proposition for

which they are cited. GLAS first cites *In re James River Coal Co.*, 360 B.R. 139 (Bankr. E.D. Va. 2007) and offers a parenthetical quote suggesting that the Court may conclude a transaction is avoidable "[i]f the numerous steps taken to transfer the debtor's property can reasonably be collapsed into a single, integrated plan that either defrauds creditors or leaves the debtor with less than equivalent value…." Mem. Opp., 17. But *In re James River Coal Co.* addressed the bankruptcy trustee's claims under 11 U.S.C. § 548(a)(1)(A), the Bankruptcy Code's avoidance statute and, more particularly, whether an alleged series of transactions would fall into the one-year lookback period provided by § 548. *Id.*[11] Plainly, such a ruling has no bearing here.

The other two cases cited by GLAS, *Flame, S.A. v. Indus. Carriers*, 39 F. Supp.3d 769, 783, 788 (E.D. Va. 2014), and *Phillips v. Moazzani (In re Tarangelo)*, 378 B.R. 128, 133 (Bankr. E.D. Va. 2007), at least address Va. Code §§ 55-80 and -81 (now §§ 55.1-400 and -401), but they are factually distinct. In *Flame*, the court's ruling rested on its finding that the entities involved in the transfers were alter egos of each other. *Id.* 39 F. Supp.3d at 783, 788 (describing the overlapping ownership and business of each of numerous different entities). Here, however, GLAS has made no allegation that the Bluestone Entities were alter egos of Greensill UK (or any other entity) such that a transfer from Greensill UK was, in fact, a transfer from the Bluestone Entities.[12] And in *Phillips*, the transfers the bankruptcy trustee sought to avoid were made ***by the debtor***. *Id.* 378 B.R. 128, 133. GLAS includes a parenthetical suggesting that the court's finding of a fraudulent transfer was based on the fact that the debtor transferred funds "into a brokerage

---

[11] As if *In re James River Coal Co.*, was not distinguishable enough, the transfers at issue in that case were "caused" by insiders of the debtor (directors and majority stockholder), not by unrelated entities. *Id.*, at 161.

[12] Nor does the Amended Complaint contain allegations sufficient to demonstrate that Tams Management or Justice Low Seam Mining are alter egos of the Bluestone Entities such that their separate corporate entities should be disregarded.

account set up by defendant's husband for defendant" (Mem. Opp. at 17), but the court did not place any reliance on that fact and, in any event, it was the debtor who made the transfer to defendant from that brokerage account.

In short, GLAS fails to cite any case holding that Virginia law recognizes the sort of expansive definition of a transfer adopted in the Bankruptcy Code and many uniform statutes. A plain reading of §§ 55.1-400 and 401 reveals that the transfers at issue must have been made by "the debtor" – one of the Bluestone Entities – to Carter Bank. Here, as the Amended Complaint alleges, they were not.  Plaintiff's fraudulent and voluntary conveyance claims relating to all three transfers must be dismissed.

### D.  Given Greensill UK's Participation in the First Two Transfers, GLAS Cannot Plead Any Intent to Defraud Greensill UK

Unable to deny that Greensill UK itself actually made the first two "fraudulent" transfers directly to Carter Bank, GLAS seeks to avoid dismissal by hiding the true facts behind artfully disingenuous allegations in the Amended Complaint.  By purposefully avoiding any allegations about what Greensill UK knew about the challenged transactions,[13] GLAS asks the Court to infer that Greensill UK was blissfully unaware of why it was transferring $247 million to Carter Bank

---

[13] While not relevant to this motion, the Court will learn that Greensill UK was fully informed about the nature of these transactions, including specifically that the transfer of $179 million was to pay off non-Bluestone debt.  Indeed, Greensill UK made five wires of specific amounts directly to specific non-Bluestone entity accounts with knowledge that they were non-Bluestone entity accounts. Not only was this known to Greensill UK at the time, but it was also known to GLAS before it filed this lawsuit because the in-house legal counsel for Greensill UK who personally managed these transactions subsequently became General Counsel of the Americas for Plaintiff GLAS. While GLAS tries to hide behind the façade that "well-pled allegations in the Amended Complaint must be accepted as true" (Mem. Opp., at 20), it is playing fast and loose with the obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Carter Bank believes it wholly improper that it be required to expend substantial resources addressing GLAS's baseless claims that hide behind purposely omissive pleadings.

on the Bluestone Entities' behalf.  In other words, GLAS argues that – because it has sufficiently obfuscated the facts surrounding the transfers by being purposely opaque when it comes to these two transfers – it can force Carter Bank to litigate this case, at substantial expense, to summary judgment, despite knowing that these claims ultimately will be dismissed because they are wholly unsupported by the facts. *Id.*

Contrary to GLAS's assertions, however, the Court can find, based on the allegations of the Amended Complaint and the reasonable inferences drawn therefrom, that Greensill UK was "intimately involved with and voluntarily participated in" the challenged transactions. *In re Refco, Inc. Secs. Litig. v. CFPB*, 2009 U.S. Dist. LEXIS 129944, *44 (S.D. N.Y. Nov. 13, 2009). Specifically, the Amended Complaint alleges that Greensill UK entered the RPA with Bluestone Coal on or about September 26, 2018, pursuant to which it agreed to provide funds to the Bluestone Entities, purportedly for the purchase of accounts receivable. Two days later, as part of the initial transaction, Greensill UK transferred $68 million directly to Carter Bank. The Amended Complaint alleges that only $59.4 million of those funds was used to pay Bluestone Entity debt. Am. Compl. ¶ 77.  Pursuant to the RPA, at the same time and as part of the same transaction, Greensill UK obtained security interests in certain of the Bluestone Entities' property. RPA §1(b)(2).  Subsequently, Greensill UK itself transferred $179 million directly to Carter Bank in December 2018, at a time when the only plausible inference that can be drawn from the allegations in the Amended Complaint is that Greensill UK **knew** the Bluestone Entities' debt had already been paid off. The only reasonable inference to be drawn from GLAS's allegations is that Greensill UK itself was intimately involved in and participated in the purportedly fraudulent transfers. GLAS apparently would have this Court believe that Greensill UK was somehow an innocent party that blindly followed the Bluestone Entities' instructions to transfer funds to Carter Bank without

17

asking or knowing the purpose of the more than $247 million in transfers.[14] This inference, far from being plausible, is wholly unbelievable – particularly given the very sophisticated nature of the securities transactions underlying the RPA and Greensill UK's role therein.

In sum, GLAS cannot plausibly allege that Greensill UK's first two transfers to Carter Bank were intended to defraud Greensill UK itself.  Indeed, GLAS is estopped from taking any such position.  Accordingly, GLAS's claims as to the first two transactions should be dismissed with prejudice.

### III.   CONCLUSION

For the reasons set forth above, Carter Bank respectfully requests that the Court dismiss Plaintiff's Amended Complaint against it in this matter with prejudice.

Dated: June 11, 2024                    Respectfully Submitted,

                                        CARTER BANK & TRUST

                                        /s/ Robert A. Angle
                                        Robert A. Angle, VSB No. 37691
                                        Megan E. Burns, VSB No. 35883
                                        TROUTMAN PEPPER HAMILTON SANDERS LLP
                                        1001 Haxall Point, 15th Floor
                                        Richmond, VA 23219
                                        Telephone: (804) 697-1246
                                        Email: robert.angle@troutman.com
                                        Email: megan.burns@troutman.com
                                        *Counsel for Defendant Carter Bank & Trust*

---

[14] This notion is also belied by the allegations made by the Bluestone Entities in the complaint it filed against Greensill UK in the Southern District of New York.  *Bluestone Resources, Inc., et al. v. Greensill Capital (UK) Limited, et al.*, Civil Action No. 1:21-cv-02253.  This complaint, like the RPA and Standstill Agreement, is referenced in and relied upon throughout the Amended Complaint.  Am. Compl. ¶¶ 8, 9, 11, 15, 79, 91, 94, 146.  The allegations there reveal that Greensill UK was, in effect, the Bluestone Entities' long-term lender and that it dictated the terms of the relationship.  *Id.* ¶ 9.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy of the foregoing to all registered parties.

> /s/ *Robert A. Angle*
> Robert A. Angle, VSB No. 37691
> TROUTMAN PEPPER HAMILTON SANDERS LLP
> 1001 Haxall Point, 15th Floor
> Richmond, VA 23219
> Telephone: (804) 697-1246
> Email: robert.angle@troutman.com
> Email: megan.burns@troutman.com
> *Counsel for Defendant Carter Bank & Trust*

19

172380508